### MRS. M. R. HARRISON ET AL. v. S. A. FOOTE ET AL.

#### No. 789.

1. **Will, Construction of—Life Estate—Limitation of Estate—Condition Subsequent.**—A testator devised to Mrs. F. and her children 100 acres of land on which they were then residing, using the following language: "I give and bequeath," etc., "to hold jointly during their lives, if they shall continue to reside on said land, but if either of them shall remove from said land, or absent themselves for the space of two years, he or she shall forfeit all interest in this bequest. It is also my wish, that none of the aforementioned legatees shall have power to alienate any part or all of their parcel of land until the youngest of them have become of lawful age." *Held:*

1. That the terms of the will can not be construed to vest in the devisees a greater estate than an estate for life.

2. That the language employed created a limitation of the estate and not a condition subsequent, and that the removal of all the devisees from the premises terminated their life estate.

2. **Same—Forfeiture of Estate—Entry—Suit by Residuary Devisees.**—A suit by the residuary devisees is equivalent to an assertion of the forfeiture, and an actual entry is not necessary.

3. **Same—Minority of Devisees.**—The fact that some of the devisees were minors when the mother removed from the premises would not prevent the forfeiture of their estate as against them.

APPEAL from Wharton. Tried below before Hon. T. S. REESE.

*G. G. Kelly,* for appellant.—1. The creation of a particular estate raises the prima facie inference that that estate alone was intended, and a general power of disposition accompanying the devise will not enlarge the estate given. Philleo v. Holliday, 24 Texas, 38; Weir v. Smith, 62 Texas, 9; Hawes & Duncan v. Foote, 64 Texas, 28; McMurry v. Stanley, 69 Texas, 230; Brant v. Coal and Iron Co., 3 Otto (U. S.), 326; Hancock v. Butler, 21 Texas, 806; Giles v. Little, 14 Otto, 291–

300; 1 Dev. on Deeds, sec. 213; 4 Kent, 12 ed., sec. 536; 1 Redf. on Wills, p. 431, sec. 14; 2 Blackst. (Cooley's), chap. 8, p. 119; 2 Redf. on Wills, p. 299, sec. 37.

2. If construed simply as a condition subsequent, on breach of which the estate continued in the special legatees until re-entry or claim of the forfeiture by those entitled thereto, then this suit, being in reality a direct proceeding seeking the aid of equity to relieve them against the breach of the condition, can not prevail, and defendants, under their plea of not guilty and cross-bill asking affirmative relief, are entitled to claim the forfeiture. Rivers v. Foote, 11 Texas, 671; Alfred v. Alfred, 1 Texas Civ. App., 245; 4 Kent, 126, 130; Tied. Real Est., secs. 277–279; 13 Am. and Eng. Encyc. of Law, 778.

*A. H. Foote, W. C. Carpenter*, and *Hume & Kleberg*, for appellees.

1. In construing wills, the cardinal rule is to follow the intention of the testator, and in order to do so the whole instrument may be looked to, as well as the circumstances which surround the testator at the date of making the will. 6 Laws. Rights and Rem., 5191; Howze v. Howze, 19 Texas, 554; Brooks v. Evetts, 33 Texas, 732; McMurry v. Stanly, 69 Texas, 230.

2. Where the general intent is clear, and it is impracticable to give effect to all the language used, the general intent must control. Cooper v. Horner, 62 Texas, 356; Peet v. Street Railway, 70 Texas, 522; Yeatman v. Haney, 79 Texas, 67.

3. The court's finding, that the forfeiture provided for in case of nonresidence upon the land by any one of the legatees was intended to inure to the benefit of those who continued to reside, and all having removed therefrom and thereby incurred the forfeiture, there was no one to claim the benefit of such forfeiture, and it fails, is correct; because there being no gift over, and the condition being a condition subsequent, is inoperative.

4. A gift of the residue to a particular person or class of persons will not be considered a limitation upon a devise with a condition subsequent attached, unless the testator directs the legacy to fall into the residuum, in case of breach of the condition. Ired. on Exec., p. 177, sec. 34; In re Vandervort's Est., 17 N. Y. Supp., 316; Green v. Dennis, 6 Conn., 293; 16 Am. Dec., 587; 25 Am. Dec., 141.

5. The removal of the appellees from the land by their mother while they were minors would not operate as a forfeiture of their interests. In re Vandervort's Est., 17 N. Y. Supp., 319; Bryant v. Thompson, 14 Id., 28.

WILLIAMS, ASSOCIATE JUSTICE.—Appellees, Stephen A. Foote, and Mrs. Bettie Carter and Mrs. Cora Neuman, joined by their husbands, plaintiffs below, claimed 100 acres of land in controversy under a special bequest of same to them and their immediate vendors by the will of W. F. S. Alexander, deceased; and appellants, defendants below,

claimed the land as residuary devisees in the same will. The petition, in addition to the usual averments proper in an action of trespass to try title, set forth the clause of the will under which plaintiffs claimed; alleged the acquisition by. plaintiff Stephen A. Foote of the interests of all the other special devisees, besides plaintiffs themselves, named in such clause, by purchase, and charged that the defendants (appellants, were also legatees under said will, and were setting up some sort of a pretended claim to the land, thereby creating a cloud upon plaintiff's title; and prayed for judgment for the title and possession, and divesting title out of defendants and vesting it in plaintiffs, and quieting plaintiffs in their title, and declaring defendants' claim of title to be null and void. The answer contained a plea of not guilty, an allegation that defendants were the legal owners of the land in fee simple, and a prayer for judgment against plaintiffs for the title and possession thereof, and for general relief.

The case was submitted to the court upon an agreed statement of facts, and judgment was rendered in favor of plaintiff Stephen A. Foote for seven-ninths, and for Mrs. Carter and Mrs. Neuman for one-ninth each of the land, and divesting all title out of defendants.

W. F. S. Alexander died in January, 1879, leaving a will dated October 25, 1876, the material provisions of which are as follows:

"That is to say, after all my just debts are paid, the residue of my estate, both real and personal, I give and bequeath as follows, to wit:

"First. To Mrs. B. H. Foote and her children, Martha J. Foote, Henry S. Foote, Lily Foote, Robedeau Foote, Cora Foote, Bettie Foote, and Stephen Foote, jointly, 100 acres of land on which they now reside, being a part of the G. W. Singleton league, said hundred acres to extend from the Bernard to the north line of the Nicholas George tract, and to be parallel to the east line of the G. W. Singleton league; to hold jointly during their lives, if they shall continue to reside on said land, but if either of them shall remove from said land or absent themselves for the space of two years, he or she shall forfeit all interest in this bequest. It is also my wish, that none of the above mentioned legatees shall have power to alienate any part or all of this parcel of land until the youngest of them have become of lawful age. I also give to said legatees my cart, all of my cattle (except oxen), and any horses of mine they may have in possession at the time of my death.

"Secondly. I bequeath to my cousin Bettie Ashby, of Prince William County, Virginia, all of my Bear Camp plantation, including the timber land on the Bernard River, formerly a part of the tract, except twenty-five acres in the southwest corner of the plantation, which I give to Mason Brent during his life-time, and at his death it shall revert to Bettie Ashby, or her heirs or assigns.

"Thirdly. I give to G. C. Duncan any money he may be owing me at the time of my death, and to Mary Bowie, his wife, I bequeath my buggy horses and buggy.

"Fourthly. I bequeath the residue of my property to the children of my cousin, Burr Albert Harrison."

The testator, at the time he executed the will and at the time of his death, owned an estate valued at $27,000, including about 3500 acres of land in Wharton County. Prior to the execution of the will he had invited Mrs. Foote, who was the widow of his second cousin, and very poor, to remove with her children, named in the will, upon the hundred acres of land, which she did, continuing to live there during his life and until the year 1881. There is nothing to show that Alexander, before his death, undertook or intended to convey the land to Mrs. Foote or her children. It was a part of an 800 acres tract, and its boundaries seem never to have been defined before the will was made. In 1881, Mrs. Foote removed from the land with her children, then aged respectively as follows: Stephen A., 10 years; Cora (now Mrs. Neuman), 17; Bettie (now Mrs. Carter), 19; A. H. Foote, 19; and the others over 21 years of age. Neither she nor any of the children have ever returned to or occupied the place in person, but have held it by tenants; and all of the children had attained their majority for more than two years prior to the institution of this suit, on the 9th day of October, 1893. The defendants, the residuary devisees under the will, have never entered upon the land. Plaintiff Stephen A. Foote has acquired by conveyances the interests of his codevisees, claimed by him.

1. We are of the opinion that the terms of the will can not be construed to have vested in Mrs. Foote and her children a greater estate than an estate for life.

The terms are, "I give and bequeath" the property, to those named, "to hold jointly during their lives." If the words preceding the designation of the property stood alone, they would undoubtedly create an estate in fee. But they are qualified by the succeeding language, "to hold jointly during their lives," which restricts the estate bequeathed. Consistently with that language, the devisees named can not be held to take an estate in fee. Brant v. Coal and Iron Co., 93 U. S., 326; Giles v. Little, 104 U. S., 291.

The court below held, in substance, that the words of the will last quoted were only intended to fix the duration of the joint possession, which it was intended the devisees should maintain, and not to limit the estate devised. In this we can not concur. The words are such as are constantly used in such connection to create life estates, and are generally held to have that effect. The main purpose of this bequest was to secure to the beneficiaries a continuance of the enjoyment of the land which was begun during the life-time of the testator. In order to secure that object, it was only necessary to give to the devisees the right to occupy and use the land for life, or so long as they might choose to remain upon it. We discover nothing, either in the language of the will or in the circumstances preceding and surrounding its execution, showing a purpose on the part of the testator to be-

stow upon the Footes the title in fee.  The clause in regard to alienation can not, we think, be construed to enlarge the estate created by the preceding language.  That clause was a restraint upon alienation, designed to prevent interruption or interference with the use of the premises as a home for the family.  Considered in connection with the provisions relating to forfeiture, its effect may be somewhat doubtful. It is enough to say, at this point, that it does not determine the character of the estate created by the clause defining such estate.  Indeed, it rather militates against the idea that a fee simple estate was created, as does the requirement that the devisees should reside upon the land during their lives.  Such conditions might perhaps be imposed upon a fee, but they more naturally accompany the granting of a life estate designed, as this bequest was, to secure to a family the benefits of a home, and surrounded with limitations and conditions intended to determine the estate as soon as the purpose of the grant should be attained.

2.  The estate bequeathed to the Footes was therefore not an estate in fee, and the question occurs, what was the character of the life estate created?  The estate is to continue during their lives "if they shall continue to reside on the land, but if either of them shall remove from the land or absent themselves from it for the space of two years, he or she shall forfeit all interest in this bequest."  Here the leading purpose of the bequest appears to be still uppermost in the testator's mind.  The home as it exists is to continue, but when the use of the land as a home shall cease, the purpose will have been subserved, and the estate shall determine.  This is the substance of the provision. We think the purpose is apparent to limit the life estate to the duration of the use as a home.  When that terminates, the estate is to determine.  The question has been discussed by counsel as to whether or not these provisions impose upon the estate an absolute limitation of its duration, or merely a condition subsequent, a failure to comply with which might be taken advantage of or waived by those entitled to do so, at their election.  The intention of the testator is to govern. The language used is more like that employed in conveyancing to create a condition subsequent; but looking at the purpose for which the estate is given, and the express provision for a forfeiture, we are of the opinion that the estate was limited, to be determined upon the removal of all the devisees from the premises, or their absence therefrom for two years.  Tied. on Real Prop., 272, 280, 281.

The testator in using this language had in mind two purposes, one to secure to such ones of the family as should remain on the land the benefits of a home; and the other, to secure to those who might succeed to his estate a return of the property, when it should be no longer so used.  The abandonment of one was not therefore made to determine the estate entirely, but was to have the effect to forfeit only his or her interest.  As the life estate and the right of those remaining to occupy the whole of the premises "jointly" was not to be determined

by the abandonment of one, such a forfeiture would necessarily have inured to the benefit of those in possession, so long as they remained. But as the estate was limited not only to the lives of the occupiers, but also to the duration of the occupancy, when all left, such estate determined.

It is urged that the prohibition against alienation, during minority of the youngest child, implied a right to sell after such child arrived at full age, and that such a right to convey is inconsistent with an absolute requirement of residence upon the land during the lives of the beneficiaries, and that a construction requiring such residence, either as a limitation or a condition, should not therefore be adopted. Clear and unequivocal provisions in a will can not be made to yield to a doubtful construction of others. It seems to us, that the prominent purpose expressed by this will is the providing a home, the securing it from interruption, and the limitation of the estate granted to such duration as was essential for the purpose. As the testator who wrote the will was unskilled in such matters, it was not unnatural that a prohibition against alienation should be introduced, in order to guard the occupants against molestation by purchasers, without an intent to affirmatively confer a power to convey at any time. It may be true that it was practically out of the power of the beneficiaries to convey any interest in the property, so limited as this was, without such a restriction; but it does not follow that the testator knew or was mindful of that fact when he wrote the will. We think the most natural view to take of the alienation clause is to regard it simply as a safeguard to the family, and not as conferring a distinct power, or as changing or qualifying the previous clauses. It certainly can not have the effect to nullify the conditions expressly imposed upon the estate; and as none of the devisees remained upon the land until the youngest child attained majority, and then undertook to convey, the question as to what would have been their rights, had they done so, is not presented. All of them left the land, and the event upon which the estate was to determine took place.

3. But whether the estate granted to appellees be held to have been one upon limitation or condition subsequent, we think the result in this case is the same. The difference between the two is, that in case of limitation the estate determines absolutely upon the transpiring of the event to the happening of which it is limited; while in estates upon condition subsequent, the happening of the condition is cause for forfeiture, and the grantor or those having his rights may re-enter or sue to recover the property, or may waive the condition, as they see fit. In the case of an estate upon limitation, the right to the reversion, remaining in the grantor, would pass to the residuary devisee; and as we think, so it would in case of an estate upon condition subsequent. Of course, in either case the intent of the testator would control; but here there is nothing in the will to prevent the residuary clause from passing such interest as, without it, would have reverted

to the testator's heirs.   We will not extend this opinion by a discussion of the authorities on the point, but content ourselves with announcing our conclusion.   Haydyn v. Stoughton, 5 Pick., 528; Clapp v. Stoughton, 10 Pick., 463; Austin v. Cambridgport Parish, 21 Pick., 215.   See authorities contra, Tied. Real Prop., sec. 277, note 1; 1 Jarm. on Wills (5 Am. ed.), 645–651.

As the right to reclaim the estate upon breach of condition subsequent would pass to the residuary devisees, we think the record in the case discloses that which is equivalent to an assertion of the forfeiture, even if the estate granted to the appellees be treated as belonging to that class.   An actual entry is not now necessary in order to enforce forfeiture, but a suit for the property is sufficient.   Tied. Real Prop., 277.

In this case, the claimants of the estate upon condition sued, alleging that the defendants, who were entitled to assert the forfeiture, were claiming the land.   The defendants set up title in themselves to the land, and prayed for judgment for it.   This has the same effect as if defendants had brought the action originally.   Their plea was in effect a cross-action.

The fact that some of the special devisees were minors when the mother removed from the premises can not, in our judgment, help their case in any view that can be taken of it.

The judgment of the court below was erroneous, and is reversed, and judgment here rendered for appellants.

                                                *Reversed and rendered.*

Delivered February 28, 1895.