## Moorman, et al. v. Louisville Trust Company, et al.

(Decided June 11, 1918.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Infants—Action—Next Friend—Courts.—The right of a next friend to .decide for an infant upon the policy of bringing suit is subject always to the controlling power of the court.

2. Infants—Action—Courts.—The court will not decide, but leave to the infant to determine upon becoming of age, the policy of bringing suit where the interests of the infants will not be prejudiced by the delay.

3. Wills—Contest—Infants.—The contest of a will by an infant devisee, by next friend, was properly dismissed, the will providing for a forfeiture of the legacies of those who directly or indirectly attempt to set aside the will, and the validity or invalidity of a non-contest clause in a will being an open question in this state.

HUMPHREY, MIDDLETON & HUMPHREY and TRABUE, DOOLAN & CRAWFORD for appellants.

HELM BRUCE, BEN F. WASHER, FRED FORCHT, LAWRENCE LEOPOLD and BRUCE & BULLITT for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

This is an appeal from a judgment of the Jefferson circuit court dismissing, without prejudice, an appeal from a judgment of the county court probating a will, prosecuted in the name and for an infant devisee and heir of the testator by a next friend, and the only question involved is whether in so doing the trial court abused a sound judicial discretion.

The written opinion of the lower court, made a part of the record, sets forth so admirably the facts and issues and proves so conclusively the power and duty of the court, in the exercise of a sound judicial discretion, to control the action of the next friend so as to safeguard the interests of the infant, it is, to that extent, adopted and is as follows:

"C. P. Moorman died in the city of Louisville, Kentucky, on February 13, 1917, having theretofore, on March 17, 1916, and March 18, 1916, made, in due form his will, and a codicil thereto, in which he devised a large estate, according to the record more than two million three hundred thousand dollars, how

much more does not appear, upon which there is an annual income of more than one hundred thousand dollars, how much more does not appear; he left as his sole descendants and heirs at law a son, C. P. Moorman, Jr., and a granddaughter, the appellant, Lucy Elizabeth Moorman, a daughter and the only child of his deceased son, Elmore B. Moorman. By his will he made a number of specific devises, one, a substantial one, of fifty thousand dollars, to Joan Moorman, the widow of his deceased son, Elmore Moorman, mother of Lucy Elizabeth; the other specific devises were not large. He nominated the Louisville Trust Company as executor and trustee of certain trusts under his will. The thirteenth clause of his will is as follows:

" 'Thirteenth. I direct my executor, with the approval of the committee aforesaid, to divide all the rest and residue of my estate, real and personal, into two equal parts, and I devise and bequeath one of such parts to the Louisville Trust Company in trust for my son, Charles P. Moorman, Jr., for and during his natural life, subject to the following limitations: so much of the income accruing from this portion as may be necessary shall be used by said trustee, under the direction of the committee, for the proper and comfortable support of my son, Charles, and after his death the principal and unused income of this share shall be disposed of as in this will hereinafter directed.

" 'I devise and bequeath the other of two said two equal parts to the Louisville Trust Company, in trust for my granddaughter, Lucy Elizabeth Moorman, for and during her natural life, subject to the following limitations; so much of the income from said portion as may be necessary shall be used by the trustee, under the direction of said committee, for the proper and liberal support of my said granddaughter and her family, should she have one. I direct that the income from this portion, not devoted to the support of my granddaughter, as aforesaid, shall be accumulated by the trustee and held as the property and estate of my said granddaughter until such accumulation shall have reached the amount of two hundred thousand dollars; when my granddaughter arrives at the age of twenty-five years said two hundred thousand dollars shall be paid to her as her absolute estate, but in the event the accumulations do

not amount to such sum at said time, then the trustee shall continue to apply the surplus income, as aforesaid, until said amount shall have been accumulated, at which time it shall be paid to her. So long as my granddaughter lives she shall receive such portion of the income of this trust as is required for her liberal support and that of her family, if any, as hereinbefore provided.

" 'Should my said granddaughter die at any time leaving issue surviving her the trust shall continue until the youngest of such issue living at her death attains the age of 21 years, and so much of the income from this portion of my estate as the committee may deem proper shall be used by the trustee for the support and education of such issue until the time above designated, when this trust shall cease, and the principal and accumulated income of this share of my estate shall be distributed per stirpes among such issue.

" 'Should my granddaughter die leaving no issue surviving her, or should such issue die without issue surviving before attaining the age of 21 years, then the share left for my said granddaughter in this will shall be employed for the same uses and purposes as the share of my son, Charles P. Moorman, Jr., and pass under this will as said share passes.'

"The seventeenth clause of the will is in these words:

" 'If any person receiving any benefit under this will shall, directly or indirectly, resist its probate or seek in any way to contest it, or vacate or annul any of its provisions, then in such event the person so doing, or for whom any one authorized by law to act shall do so, shall forfeit all interest in my estate under this will or otherwise, and my estate shall be distributed under this will as though such person had died before me, leaving no issue surviving him or her.'

"By the fourteenth clause of the will, he provides for the organization and establishment by a committee, which he nominated for that purpose, of a public charity for indigent old women, to be known as 'The Charles P. Moorman Home for Women.' The will provides elaborately for the management of the home; for the care and management of the estate; it provides also elaborately for the care and keeping of his son, Charles P. Moorman, Jr., whom he refers to as an invalid.

"There are various provisions in the will which are not pertinent to the issue now before the court and it is unnecessary to discuss them. The will was probated on February 17, 1917, and the defendant, Louisville Trust Company, qualified as executor and accepted the trust imposed by the will. On February 24, 1917, Joan Moorman, mother of Lucy Elizabeth, qualified as her guardian, and on March 27th thereafter resigned, and on that day the Kentucky Title Savings Bank & Trust Company was appointed by the county court, duly qualified and is now the statutory guardian of Lucy Elizabeth Moorman.

"On August 23, 1917, Lucy Elizabeth Moorman, the infant, through Nicholas H. Dosker, her next friend, filed statement of appeal, alleging that the paper probated was not the true last will and testament of C. P. Moorman, deceased, because of lack of testamentary capacity, and also because of undue influence exercised in its making, in which all the parties interested were made defendants and duly summoned, including the executor and trustee, the Louisville Trust Company, and the statntory guardian, Kentucky Title Savings Bank & Trust Company, and Charles P. Moorman, Jr. The trustee and Charles P. Moorman, Jr., filed special demurrer to the statement on the ground that the plaintiff and appellant has not the legal capacity to sue or maintain the proceeding; they also moved the court to require the next friend to execute bond to protect Lucy Elizabeth Moorman against loss or damage which may be sustained by reason of the proceeding; they file also a plea in abatement on the general ground that the proceeding is against the real interest of Lucy Elizabeth Moorman, and further, that Joan Moorman, while she was guardian accepted as guardian certain benefits under the will. The appellant files answer to the plea in abatement denying the contention that the proceeding is against the best interest of Lucy Elizabeth, and denying also that Joan Moorman, as guardian, accepted anything under the will other than certain items of expense for the maintenance and care of Lucy Elizabeth, and exhibit copies of correspondence between the Kentucky Title Savings Bank & Trust Company, guardian of Lucy Elizabeth, and Mrs. Elizabeth C. T. Warren, maternal grandmother of Lucy Elizabeth, and

also letter from Mrs. Warren to Nicholas Dosker, and a letter from Dosker to counsel for appellant in this case. In a response, the defendants disclaim any plea of estoppel, on the ground that Joan Moorman, as guardian, accepted benefits under the will, but aver that the facts thus pleaded were for the purpose of bringing before the court the question of the right of Nicholas Dosker to sue as next friend, because, as the defendants claim, such action is against the best interests of the infant.

"The statutory guardian, Kentucky Title and Savings Bank & Trust Company, though a party to this suit, has not responded in any way, and while, as appears in its letter to Mrs. Warren, it declines to prosecute the appeal, it nowhere says that in its judgment the appeal ought not to be prosecuted by a next friend.

"Mrs. Joan Moorman, while she was guardian, did not prosecute the appeal, and since she had a fifty thousand dollar bequest under the will, she perhaps would not be expected to jeopardize her personal interest to have the validity of the will tested, so that her failure, while she was the guardian, and the failure of the present statutory guardian, the Kentucky Title Savings Bank & Trust Company, do not aid the court in determining whether or not this appeal should be prosecuted.

"It is manifest upon the record that if the appeal is prosecuted, whatever the infant would gain through the appeal, the executor and trustee would lose, and whatever the infant would lose by reason of the appeal, the executor and trustee would gain, and therefore the advice from the executor that the proceeding is in conflict with the rights of the infant must be considered in the light of advice from one whose interests are directly in conflict with the interests of the infant so far as the contest is concerned.

"In the will itself there is such clear and unmistakable evidence that the testator considered his son, Charles P. Moorman, Jr., incapable not only of looking after his own estate, but of looking after himself, by reason of his being an invalid, the court can not look to him for reason for acting the one way or the other upon the question involved. There is nothing in the record from which the court would conclude that the next friend is not a

competent and suitable person to act in that capacity, and the fact that the only other relative the infant has, its maternal grandmother, has requested such action on the part of the next friend, makes this course not at all one of intermeddling or a volunteer without grounds to investigate and prosecute this proceeding. The mere wish of the grandmother, Mrs. Warren, to have the contest made and prosecuted, can not be considered by the court a sufficient reason therefor. She is prompted manifestly by laudable and natural affection for her granddaughter, but she may or may not realize the responsibility which attaches to the course being pursued.

"The next friend has employed able counsel, and the court does not doubt, if permitted by the court, this proceeding would be thoroughly prepared, and the cause ably presented and the contest of the will vigorously prosecuted.

"The first question to be decided is, has the court the power and is it the court's duty to determine whether or not the next friend will be permitted to prosecute the appeal?

"A next friend of an infant is and of necessity must, to a large degree, be acting under the direction and control of the court.

"In Longnecker v. Greenwade, 5 Dana, 516, an action had been brought by Lucy Ann Trimble, a minor, by her father, Isaac Trimble, her next friend, for slander. During the progress of the proceeding, the father being insolvent, one Longnecker was substituted as next friend. Pending the litigation, the infant and her father made a compromise of the suit, and at their united instance and against the consent of Longnecker as next friend, the suit was dismissed in the circuit court and an appeal was taken by the next friend, and in sustaining the action of the lower court, the Court of Appeals says:

" 'The court, in the exercise of sound discretion, may control a next friend of an infant plaintiff as well as a guardian *ad litem* of an infant defendant, and should always in that respect do that which the infant's interests shall seem to require.'

"In Robinson v. Talbot, 25 Ky. L. R., 1914, the court dismissed a petition brought by a next friend over his objection and said:

" 'It is the duty of the chancellor to protect the infants and see that they are not prejudiced by any act

or omission of the next friend, and to this end may, if he deems it necessary, revoke the authority of the next friend and substitute another, or dismiss suits instituted for the ostensible but not real interest of the infant.'

"An elaborate discussion of this question is found in Swope, et al., v. Swope, 173 Ala. 157 (31 Ann. Cas. 935), in which the court reaches the same conclusion, as in the two Kentucky cases quoted, and there is an extensive note to this case in Annotated Cases citing many authorities in support, and to the same effect is Stevens v. Cole, 7 Cush. 489, where it is said:

" 'The name of the *prochein ami* thus introduced into the process without and previous order or sanction of the court, the power of supervision, so far as to prevent either an unauthorized use of the name of one as *prochein ami* or the improper institution of a suit by a volunteer *prochein ami* in disregard of the interest of the infant, must, of course, remain with the court to be exercised on a motion to stay proceedings or dismiss the action, and to this extent the court will control the use of the name of a *prochein ami*.'

"It is not contended by the appellant that the court is without power of control, but it is very earnestly contended that this is not a case for the exercise of control.

"In view of the conclusion based upon the authorities and sound reasoning that the court has the power and rests under the duty to protect the substantial interests of an infant and see to it that nothing is done by a next friend to prejudice or injure such interests, it devolves on the court, in this case, to determine whether or not, under existing conditions, the next friend should be permitted to proceed with this appeal.

"In considering this question, the court assumes and acts upon the assumption that the next friend is acting in good faith; that he is not a mere volunteer, but is acting at the request of the maternal grandmother, who is the only relative of the infant who would probably make the request, the mother being restrained by a substantial devise under the will; and upon the assumption further, that the next friend and his counsel, under existing conditions, would not institute this proceeding without evidence sufficient to make out a *prima facie* case which would authorize a submission of the question

of will or no will to a jury. This, however, does not go far enough to secure the substantial rights of the infant. Such evidence as the appellant has, of course, is to be sifted by cross-examination; it is presumably to be met by conflicting and countervailing evidence; it may fairly be said that there is no character of litigation where there is more latitude permitted in the evidence than in the trial of a will case.

"In determining the course to be pursued here, the court is called upon to consider the infant's property rights under the will; what would result if the will should be contested to the end and finally upheld; and what those rights will be if the will should be broken.

"Under the will, as will be seen by an analysis of clause thirteen, one undivided half of the estate, after paying the specific devises, is given in trust for the benefit of Lucy Elizabeth 'for and during her natural life, subject to the following limitations: so much of the income from said portion as may be necessary shall be used by the trustee, under the direction of said committee, for the proper and liberal support of my said granddaughter and her family, should she have one. I direct that the income from this portion, not devoted to the support of my granddaughter, as aforesaid, shall be accumulated by the trustee and held as the property and estate of my said granddaughter until such accumulations shall have reached the amount of two hundred thousand dollars; when my granddaughter arrives at the age of twenty-five years said two hundred thousand dollars shall be paid to her as her absolute estate, but in the event the accumulations do not amount to such sum at said time, then the trustee shall continue to apply the surplus income, as aforesaid, until said amount shall have been accumulated, at which time it shall be paid to her. So long as my granddaughter lives she shall receive such portion of the income of this trust as is required for her liberal support and that of her family, if any, as hereinbefore provided.

" 'Should my said granddaughter die at any time leaving issue surviving her the trust shall continue until the youngest of such issue living at her death attains the age of 21 years, and so much of the income from this portion of my estate as the committee may deem proper shall be used by the trustee for support and education

of such issue until the time above designated, when this trust shall cease, and the principal and accumulated income of this share of my estate shall be distributed *per stirpes* among, such issue.'

"Thus it will be seen that Lucy Elizabeth is to have proper and liberal support from the income of one-half of this large sum; that she is to have two hundred thousand dollars when she arrives at the age of twenty-five; that her family, if she has a family, shall always receive such liberal support, and if she leaves issue at her death, when the youngest of such issue shall attain the age of twenty-one years, the trust shall terminate and the whole share, together with the accumulated income, shall go to such child or children as she may have.

"The court can not contemplate that the trustee, under the advice and direction of the committee, will be meager in furnishing what the testator denominates proper and liberal support for Lucy Elizabeth, or for her family, if she have one; but if such disposition should be manifested by the trustee, the chancellor has power to direct and control such allowance.

"If the will should be set aside and held for naught, the guardian of Lucy Elizabeth would acquire at once the possession of the one undivided half of the estate, aggregating, doubtless, $1,250,000.00, and perhaps more; and when she arrives at the age of twenty-one, this fortune would come into her hands.

"The difficult question, and the controlling question with this court is, what would be the result if the court should sanction the action of the next friend and permit a contest of the will, having in mind the forfeiture clause contained in clause seventeen, which is in these words:

" 'If any person receiving any benefit under this will shall directly or indirectly resist its probate or seek, in any way to contest it, or vacate or annul any of its provisions, then in any such event the person so doing, or for whom any one authorized by law to act shall do so, shall forfeit all interest in my estate under this will or otherwise, and my estate shall be distributed under this will as though such person had died before me, leaving no issue surviving him or her.' "

As stated, the difficult and controlling question before the lower court, as here, in determining whether, upon these facts, the court, in the exercise of a proper dis-

cretion, should have permitted the next friend to proceed with the contest of the will, depends upon the effect of the contest forfeiture clause, because, if this clause is void as to the infant, as contended by counsel for appellant, she has a chance of greatly augmenting her share in the large estate of decedent if successful in setting aside the will and can lose nothing but the costs, a mere trifle in a game for such stakes, if she fails in the effort, and the contest in nowise endangers any material interest of hers and should not have been forbidden by the court; but if, upon the other hand, the forfeiture clause is valid, as contended by appellees, the very substantial interests the infant receives under the will are staked against the outcome of the contest, and, while if successful, the gain would be very large, yet if unsuccessful, the loss to the infant woud be so disastrous that a court, entrusted with the power and discretion of deciding for the infant whether she should take such chances, certainly could not be accused of an abuse of such power and discretion in refusing to permit the infant, by a next friend, to participate in such a hazardous game of chance, for such it would be, despite the contention of learned counsel that, in this particular case, there is no chance to lose because of the extreme age of the testator and the proof they can produce of his physical infirmities and lack of mental capacity, as this court knows judicially there is always a chance to lose in any kind of a lawsuit, and especially is this true in a contest of this character. So that, to determine whether or not the court abused its discretion we will inquire into, although we need not adjudge, the effect of the forfeiture clause in the will, unless it is absolutely void.

The question has never been decided in this jurisdiction, although in two cases in which wills containing such clauses were construed by this court, Lee v. Colston, 5 T. B. Mon. 246, and Hoskins v. Arteburn, 13 Ky. Opinions, 615, are found expressions possibly indicative of the court's opinion about the effect and validity of such clauses, but if so, not entirely harmonious; and it can not be said that by either or both of these cases any definite rule was adopted, but it was indicated in both that such a clause is not void. The question, however, has been frequently considered in other jurisdictions,

but, unfortunately, there is much diversity in the conclusions reached, and authority is found for each of the following constructions, where there is a gift over to another of personal property; and, as such are the conditions here, a consideration of any possible qualifying effect upon the validity of such a clause is unnecessary where there is no gift over or where real estate is devised.

First. That the testator has the absolute right to prescribe the conditions upon which his bounty must be accepted; and that a non-contest clause in a will is, therefore, binding and valid and contravenes no public policy. 2 Williams on Executors, 7 Am. Ed., 1138; Roper on Legacies, 2 Am. Ed. p. 795; 2 Jarman on Wills, 5 Am. Ed. p. 581; Cooke v. Turner, 15 B. M. & W. 727, 14 Simons, 493; Smithsonian Institute v. Meech, 169 U. S. 398; Bradford v. Bradford, 19 Ohio, 546; Hoit v. Hoit, 42 N. J. Eq. 388, 59 Am. Rep. 43; Donegan v. Wade, 70 Ala. 501; Sackett v. Mallory (Mass.), 1 Metc. 355; Hite's Estate, 155 Cal. 436, 21 L. R. A. (N. S.) 953, 101 Pac. 443; Miller's Estate, 156 Cal. 119, 23 L. R. A. (N. S.) 868, 103 Pac. 842; Moran v. Moran, 144 Iowa, 451, 30 L. R. A. (N. S.) 898, 123 N. W. 202; Massie v. Massie, 54 Tex. Civ. App. 617, 118 S. W. 219.

Second. That such a non-contest provision is not obligatory, as against public policy, if there exists *probabilis causa litigandi*. In re Friend, 209 Pa. St. 442, 68 L. R. A. 447, 58 Atl. 853; South Norwalk Trust Co. v. St. John (Conn.), 101 Atl. 961; Jackson v. Westerfield, 61 How. Pr. 399; Bryant v. Thompson, 50 Hun. 345, 14 N. Y. Supp. 28; Page on Wills, sec. 683.

It seems that at least the greater number of authorities support the first of these propositions, but as heretofore stated it is not necessary to a decision of this case that we adopt either view, since under the first there could be no serious contention that the court abused a sound judicial discretion in preventing the infant devisee, by a next friend, from staking her bequest upon the chance of a favorable decision of a contest, especially since she will have ample time after attaining her majority to decide that question for herself; and, if we should accept the latter view, as we are asked by counsel for appellant to do, although they argue the clause is absolutely void, we think, under the peculiar facts

of this case, the decision of the lower court was equally an exercise of a sound judicial discretion, since the infant will be of lawful age in about two and one-half years, about a year and a half before the expiration of her right to contest the will, when she can for herself determine the question of taking the chance of being able to establish the probable cause requisite under the latter view to prevent a forfeiture, for, under that view of the effect of the non-contest clause, the question of probable cause must be encountered eventually, if the will is upheld, and can not be determined in this action so as to preclude the corporation not now, but hereafter, to be organized, and hence not a party to this litigation, from insisting upon a forfeiture by appellant and its right under the gift over to what is given under the will to appellant and her descendants. Under such circumstances and under any view of such a contest clause, except that it is absolutely void, it seems to us there was lacking any reason why the court, in the exercise of a sound judicial discretion, should have made so important election for the infant, when that election can be left to be made by her after reaching her majority without risk of any kind except that witnesses may die or their memory of essential facts become dimmed in the two and one-half years before she can make the decision for herself, a risk that affects alike all interested parties and is insignificant as compared with the risk incident to the contest.

It therefore follows that the lower court did not abuse a sound discretion in the judgment appealed from, unless the non-contest clause is absolutely void, and there is no authority whatever to that effect when there is a gift over as here from any court of last resort or text book, as far as we know, and but one case reported from an intermediate court, Bryant v. Thompson, 59 Hun. 345, 14 N. Y. Supp. 28, in which, although admitting the validity of such a clause against adults, it is held to be void as to infants, "as against public policy, because seeking to deprive the courts of the powers and duties imposed on them by law for the protection of infants." We would not care to dispute the proposition that such a clause was invalid as against public policy if it did, in truth, tend even in the slightest degree to deprive the courts of the powers and duties imposed upon them by law for the

protection of infants, or if it could stay or trammel the courts in the exercise of their judicial functions; but that such a clause does not and can not have any such purpose or effect is, it seems to us, too clear for argument, although such a clause unquestionably may, in the case of infants, require of the courts an exercise of judicial discretion to safeguard their interests, but this is not unusual or against public policy, nor has it ever been declared, so far as we know, that a sound public policy demands that infants shall not be bound by the court's discretion whenever required and exercised in their behalf. It is, upon the other hand, most necessary and in accord with public policy that an infant shall be thus bound, for otherwise of what avail the suit. The very purpose of an action by a next friend, where there is no guardian, or he refuses to sue, is to test the infant's rights and to have them conclusively determined as to every person, adult and infant alike, who is a party to the action; and the reason for entrusting the power to, and imposing the duty upon, the court to control the action of a next friend is that in the action where the infant's rights will be concluded, no unwise and dangerous risks may be incurred. The court's discretionary control of the next friend arises out of the very fact that the infant will be bound by the result, and except for which fact there would be no necessity therefor, so far as the infant is concerned. And, does not the conclusion reached in the Bryant v. Thompson case, instead of protecting the courts in the exercise of the duties and powers imposed upon them by law, rather shift from the courts to the next friend the responsibility of deciding what is best for the infant, denying to the court either power or duty of control, but claiming immunity for the infant from the legal consequences of what the next friend, thus freed of judicial control, has done in the infant's name and behalf in a civil action? It has always been the policy of the law to exempt infants from responsibility for their own acts as necessary for the proper protection of their rights, but it would certainly present an anomaly to exempt them from responsibility also for the acts of those legally constituted to act for them.

It is also of interest to know, while not indicative possibly of the court's view upon the question here involved, that upon appeal by the executors in the Bryant

v. Thompson case to the court of last resort, the appeal was dismissed by an almost equally divided court upon the ground that the real parties in interest had not appealed, and the question involved was of such great interest and importance that it ought not to be passed upon by that court until brought there by some party having an actual and practical, as distinguished from a mere theoretical interest in the controversy.    Bryant v. Thompson, 128 N. Y. 426.

It is easy to understand how it can be argued, whatever the real merits of such an argument, that a non-contest clause infringes public policy unless an investigation upon probable cause and in good faith may be had to ascertain whether or not the instrument is in fact the will of the deceased, but it is not so easy to comprehend the argument that to ascertain whether or not a conditional devise is against public policy it must first be learned who is affected thereby, and that a testator, because of good morals or a sound public policy, may attach a condition to a gift to his adult child that he may not attach to a gift by the same instrument to his infant child.  If such should be declared to be the law, no person, no matter how perfect his mind, could prevent a contest of his will by the objects of his bounty, some of whom were infants, no matter how sound his reasons for so desiring might be considered, if some next friend regarded the provision made for the infant unfair or a provision for the infant's issue unwise; and the practical result of such a decision would be that a person without infant dependents could exercise a control over the disposition of his property that another with such dependents could not.  The rule is universal that infants are bound, just as adults are bound, by judgments in actions prosecuted in their names and for their supposed benefit in the manner prescribed by law, even though the result might prove the action unwise and not for their good, and we can not believe that public policy demands they shall not be responsible likewise for the legal consequences of such actions.  We are convinced that whatever the true doctrine with reference to such clauses, it must apply alike to all.

And while under other circumstances than those present in this case, the court may be required to make an examination of the evidence upon which the next friend

is proceeding in order that it may determine for the infant's protection and welfare whether a contest is advisable, upon the facts admitted here it seems to us there is no reason to doubt the wisdom of the court's refusal to permit the next friend to make so vital election for the infant in order that the infant may, within so short a time and when of legal age, make that election for herself; hence, there was no necessity for the court's examination of the testimony available to appellant upon the question of probable cause.

We do not deem it necessary to discuss at length the starvation theory, nor the difference in the taxes due the state from decedent's estate under the will and without it, advanced by counsel for appellant, because neither in our judgment is of weight in determining the validity of such clause. The former might, of course, render necessary an immediate election by the court for the infant whether to contest or accept the will where there was danger of the infant starving or being improperly cared for pending the time when he could elect for himself, but that is its only force and not of applicability here; while the fact that a provision of the will for a charitable cause lessens the amount of inheritance tax due the state, is manifestly but the result of a statutory declaration of public policy to exempt such funds from taxation, and certainly affords no reason either for or against the validity of the non-contest clause in the will, or the wisdom of a contest by the infant.

Since the above was prepared, our attention has been called by counsel for appellant to the case of Rouse v. Branch (S. C.), 74 S. E. 133, 39 L. R. A. (N. S.) 1160, wherein the court *conceded,* evidently for the purpose of argument, that the four propositions stated by counsel for the appellant were sound as general statements of law, the fourth of which being "where the will is contested on behalf of an infant legatee or devisee, the forfeiture will not be decreed, irrespective of whether there was a gift over or not," but the court said in reference to these propositions, "it does not follow that they are applicable to the facts of this case," and it does not appear from the opinion that infants were involved in that case or upon what, if any, authority other than the statement of counsel, this fourth proposition was asserted. Clearly, such a concession confessedly and ap-

parently not pertinent to the facts being considered, can not be accepted as authority in the decision of a question as "interesting and important," to quote the Court of Appeals of New York, as the one involved here. This case does not, therefore, alter our position or affect what we have already written.

Wherefore, the whole court sitting, the judgment is affirmed.