## Richmond

Mary Womble, Et Al. v. Benjamin T. Gunter, Jr., Et Al., Etc., Et Al.

Lafayette H. Parramore, Sr., Et Al. v. Benjamin T. Gunter, Jr., Et Al., Etc., Et Al.

November 26, 1956.

Record Nos. 4584, 4585.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Thomas L. Woodward* (*Clarence E. Hodges; Mears & Mears,* on brief), for appellants, Womble, et al.

*J. Brooks Mapp* (*William King Mapp; Mapp & Mapp,* on brief), for appellees, Gunter, et al.

*Thomas N. Downing; W. G. Mordecai* (*Newman, Allaun & Downing; Mordecai, Mills & Parker,* on brief), for appellants, Parramore, et al.

*J. Brooks Mapp; Thomas L. Woodward* (*William King Mapp; Clarence E. Hodges; Mapp & Mapp; Mears & Mears,* on brief), for appellees, Gunter, et al.

HUDGINS, C. J., delivered the opinion of the court.

■ George F. Parramore, Sr., died testate on June 4, 1945. His somewhat complicated will, including five codicils, was duly probated and Benj. T. Gunter, Jr., and Quinton G. Nottingham qualified as executors. The testator devised and bequeathed all of his property in various amounts and proportions to his ten living children and numerous grandchildren.

On May 16, 1947, all the legatees and devisees of the testator, one being named as respondent for the purpose of pleading, filed a bill in chancery attacking the validity of the will on the ground of mental incompetency of the testator. The issue *devisavit vel non* was tried in September, 1950, and resulted in a mistrial. A final decree dismissing the suit was entered on March 26, 1952, the effect of which makes the validity of the will unquestionable.

Benj. T. Gunter, Jr., and Quinton G. Nottingham, as executors of the estate of the testator, filed the bill in this cause alleging, among other things, that all of the thirty children and grandchildren of the testator named as beneficiaries in the will, except Lafayette H. Parramore, J. Morrison Parramore, Lafayette H. Parramore, Jr., Jacqueline P. Phister, Sophie Faison Mitchell and Dora W. Pike, had instituted legal proceedings to contest the validity of the will and thereby had breached the condition of paragraph XIII of the will, which provided that if any one or more of the legatees or devisees should contest the

will, then such contestants should forfeit any and all benefits made for him or her. The prayer of the bill was that the will be construed and the rights of all interested parties therein be determined.

Twenty-four of the named respondents filed a joint answer in which they admit that they and each of them had contested the validity of the will and alleged that the other six beneficiaries alleged in the bill to be non-contestants had in fact participated in the contest with full knowledge of their rights and obligations thereunder and of the conditions imposed by the testator.

K. Addison Jarvis, Trustee of Christ Episcopal Church of Eastville, filed an answer to the bill in which it is alleged that all of the thirty children and grandchildren named as beneficiaries in the testator's will had joined in the former suit contesting the validity of the same and had thereby forfeited all their interest in the estate of the testator, which, under the conditions stated in paragraph XIV of the will, passed to the church. This paragraph provides: "Should all my legatees and devisees contest my will, then my entire estate shall pass to Christ Episcopal Church in Eastville."

The six beneficiaries, Lafayette H. Parramore, J. Morrison Parramore, Lafayette H. Parramore, Jr., Jacqueline P. Phister, Sophie Faison Mitchell and Dora W. Pike, neither filed an answer to the bill nor denied in the pleadings the allegations in the answers of the other respondents. All except J. Morrison Parramore appeared by attorneys in the taking of depositions and participated in the argument in the lower court and in this court.

The learned Chancellor by his decree declared that all of the legatees and devisees of George F. Parramore, Sr., participated in the former suit contesting the validity of the will, that the condition stated in paragraph XIV was valid and applicable, and that Christ Episcopal Church in Eastville was entitled to all of the net estate of the testator. To review this decree two petitions for appeal were allowed, one to the twenty-four named beneficiaries who admitted they had participated in the contest, and the other to the five beneficiaries who now claim they did not participate in the contest.

The question, whether legacies and devises conditional upon the legatee or devisee not contesting the will are actually subject to the condition, does not seem to have been determined in this jurisdiction. The question was briefly discussed in *Fifield* v. *Van Wyck*, 94 Va. 557, 563, 27 S. E. 446, where it is said by way of dictum that such conditions annexed to bequests of personal estate "where there is no

gift over upon breach of such condition are generally considered as *in terrorem* merely, and inoperative." In most jurisdictions the distinction between such a conditional gift of realty and personalty with no gift over and one with gift over has been disregarded. Further discussion of this phase of the question is unnecessary as the will contains gifts over of personalty and realty.

Appellants and appellees agree that a condition against contesting a will or attempting to set it aside is generally held valid and enforceable. However, the twenty-four appellants contend that the general rule is subject to an exception, namely, that such provision is not effective as to the beneficiaries who unsuccessfully contest the will if it affirmatively appears that the contest was instituted by them in good faith and with probable cause to believe the will to be invalid.

The reason generally advanced by the authorities in support of the view that the "no contest" condition should be held ineffective where the contest is based on good faith and probable cause is that a sound public policy demands that the truth of a disputable claim should be ascertained as the law provides, and that since courts are created to administer justice there should be no penalties inflicted upon those who seek their performance of that function. It is argued that if a will is actually invalid, a strict and literal application of such "no contest" clause would tend to prevent the establishment of this fact, and thus thwart the course of justice. The persons, who may have been instrumental in the creation of the invalid document and who were to profit most by its admission to probate, would be provided a helpful cover for their wrongful acts. *Hartz' Estate* v. *Cade etc.*,—— Minn. (1956) ——, 77 N. W. 2d 169; *Whitehurst* v. *Gotwalt*, 189 N. C. 577, 127 S. E. 582; *In re Friend's Estate*, 209 Pa. 442, 58 A. 853, 68 L. R. A. 447; *Rouse* v. *Branch*, 91 S. C. 111, 74 S. E. 133, 39 L. R. A., N. S., 1160; *Sherwood* v. *McLaurin*, 103 S. C. 370, 88 S. E. 363; *Tate* v. *Camp*, 147 Tenn. 137, 245 S. W. 839, 26 A. L. R. 755; *Dutterer* v. *Logan*, 103 W. Va. 216, 137 S. E. 1, 52 A. L. R. 83; *In re Will of Keenan*, 188 Wis. 163, 205 N. W. 1001, 42 A. L. R. 836; *In re Estate of Cocklin*, 236 Iowa 98; 17 N. W. 2d 129, 157 A. L. R. 584, Ann. 596, Ann. 125 A. L. R. 1135, 57 Am. Jur. Wills, § 1512, p. 1026; 81 Penn. Law Review, 267; 3 Washington Law Review, 45; I Roper on Legacies, p. 795; 8 Ala. Lawyer, 144; *Ryan* v. *Wachovia Bank & Trust Co.*, 235 N. C. 585, 70 S. E. 2d 853.

Some authorities maintain that in passing upon the defense of good faith and probable cause to a "no contest" provision in a will, con-

sideration should be given to the grounds of the contest. A will is usually contested on one or more of six grounds; namely, lack of testamentary capacity, fraud, undue influence, improper execution, forgery, or subsequent revocation by a later will. These authorities declare that where the contest is based upon the claim of revocation by a later will, the public has an interest in having all the documents properly presented to the court; a person knowing of such instrument has the moral if not the legal duty of presenting the instrument for consideration; it would be against public policy to deter such person from presenting the same if he knew that he would risk the loss of all benefits under the will if he took any action on it. The conclusion of these authorities is that if such person's action in instituting the contest is based on good faith and probable cause he should not be deprived of his benefits by the "no contest" provision.

The same authorities argue that the public is interested in the discovery of the commission of the crime of forgery, and such forgery or subsequent revocation by a later will is usually based upon evidence more definite in character than that tending to establish the shadowy lines of demarcation involved in mental capacity, undue influence or fraud. They also argue that since this element is not involved in a contest based upon fraud, undue influence or lack of testamentary capacity, the balance of public policy favors sustaining the defense of good faith and probable cause where the contest is based upon forgery or the production of a later instrument believed to be the true will and should be rejected where the contest is based upon other grounds. Restatement, Property, § 428, p. 2499; *Barry* v. *American Security & Trust Co.*, 77 U. S. App. D. C. 351, 135 F. 2d 470, 146 A. L. R. 1204 and cases therein cited, and Ann. 1211.

Other authorities of equal dignity hold that "good faith and probable cause" do not protect the contesting legatees or devisees. The reasons advanced in support of this view are well expressed by Chief Justice Rugg in *Rudd* v. *Searles*, 262 Mass. 490, 160 N. E. 882, 58 A. L. R. 1548, 1555, as follows: "The ease with which plausible contentions as to mental unsoundness may be supported by some evidence is also a factor which well may be in the mind of a testator in determining to insert such a clause in his will. Nothing in the law or in public policy, as we understand it, requires the denial of solace of that nature to one making a will. A will contest not infrequently engenders animosities and arouses hostilities among the kinsfolk of the testator, which may never be put to rest and which contribute to

general unhappiness. Moreover, suspicions or beliefs in personal insanity, mental weakness, eccentricities, pernicious habits, or other odd characteristics centering in or radiating from the testator, may bring his family into evil repute and adversely affect the standing in the community of its members. Thus a will contest may bring sorrow and suffering to many concerned. A clause of this nature may contribute to the fair reputation of the dead and to the peace and harmony of the living. Giving due weight to all these considerations, we are unable to bring our minds to the conviction that public policy requires that a testamentary clause such as here is involved be stamped as unlawful, even if the contestant had good grounds for opposing the allowance of the will. It seems to us that, both on principle and by weight of authority, this is the right result."

Among authorities supporting this view are *In re Kitchen's Estate*, 192 Cal. 384, 220 P. 301, 30 A. L. R. 1008; *Smithsonian Institution* v. *Meech*, 169 U. S. 398, 18 S. Ct. 396, 42 L. ed. 793; *Perry* v. *Rogers*, 52 Tex. Civ. App. 594, 114 S. W. 897; *Bradford* v. *Bradford*, 19 Ohio St. 546, 2 Amer. Rep. 419; *In re Estate of Miller*, 156 Cal. 119, 103 P. 842, 23 L.R.A., N.S., 868; *Schiffer* v. *Brenton*, 247 Mich. 512, 226 N. W. 253; *Rossi* v. *Davis*, 345 Mo. 362, 133 S. W. 2d 363; 125 A. L. R. 1111; *Bender* v. *Bateman*, 33 Ohio App. 66, 168 N. E. 574; *Barry* v. *American Security & Trust Co.*, 77 U. S. App. D. C. 351, 135 F. 2d 470, 146 A. L. R. 1204; *Provident Trust Co.* v. *Osborne*, 133 N. J. Eq. 518, 33 A. 2d 103; Ann. 125 A. L. R. 1135; Cases and Text of Law of Wills, Leach, 2d Ed., 119; *Chambers* v. *Chambers*, 322 Mo. 1086, 18 S. W. 2d 30, 67 A. L. R. 41, Ann. 52; *Burtman* v. *Butman*, 97 N. H. 254, 85 A. 2d 892.

The record in this case clearly reveals the adverse and disturbing effect upon family relations suggested by Chief Justice Rugg as possibly resulting from dispute and contest among the beneficiaries. Prior to the institution of the suit in 1947 to contest the will the children and grandchildren of the testator seemed to have been bound together with the usual and normal family ties, each having respect for and confidence in the other. As one of the sons, William P. Parramore, said: "There were eleven children in that family, and all our life we were in agreement, and I never knew them to disagree on any matter until this matter arose, and I thought it was a shame that we couldn't get together............."

After the contest of the will had been settled adversely to the contentions of the contestants the family seemed to have been split

asunder, charging each other with misrepresentation, fraud and deceit. In the answer of the twenty-four respondents it is alleged that the other six beneficiaries were parties to the contest "with full knowledge of their rights, obligations, duties and burdens with respect thereto, and the results to be had therefrom, and collaborated in all respects therein until the day of and during the hearing . . . . . . . (they) in order to gain advantage over other parties to said litigation wilfully, fraudulently, deceitfully and wickedly withdrew as parties complainant." Five of the other six beneficiaries in their brief say: "The other 24 appellants who are separately appealing this matter and who actively and consistently have attacked the Will can hardly hope to escape the forfeiture provision under any interpretation of the law; they have produced no evidence of any probable cause or good faith and a careful examination of the testimony in record tends to indicate the exact opposite. It would appear that the caveat suit was impetuously brought to satiate their dissatisfaction and impatience."

It is unnecessary, however, for the court at this time and in this case to pass upon the question whether good faith, probable cause and reasonable justification afford a defense to a "no contest" provision in a will. This is a question that must be affirmatively established by the parties making the allegation. It was not made an issue in the pleadings other than as heretofore stated. No testimony bearing on the question was introduced except the opinion of one witness, who did not state the facts upon which he based his conclusion, nor was the question raised in the lower court. It is well settled that this court will not determine questions not raised in the court below. "We do not consider matters which are not presented in the pleadings or involved in the issues of the case in the trial court. New contentions first appearing in the petition for appeal are beyond our review of the case." *Stevens* v. *Mirakian*, 177 Va. 123, 129, 12 S. E. 2d 780; 1 MJ, Appeal and Error, § 242, p. 661.

■ The five appellants who obtained a separate appeal contend: (1) That they were not parties to the suit brought in 1947 to contest the will, and (2) that as three of them were minors at the time those three are not bound by the "no contest" provision, even though they were parties to the former suit.

The evidence on the issue as to who were parties to the suit to contest the will is not in substantial conflict. The twenty-four beneficiaries (four of whom were minors) who filed a joint answer in this case admit that they were parties to the suit to contest the will and

alleged that the other six beneficiaries were likewise parties thereto. James H. Parramore filed no answer to the bill and took no part in the proceedings in the lower court or in this court. The decree as to him is final. Lafayette H. Parramore was a party complainant to the original bill in 1947 to contest the will, but after the jury were sworn to try the issue *devisavit vel non* and before it was submitted he, on his own motion, was made a party defendant instead of a party complainant. Some time after the jury had reported that they were unable to agree and had been discharged, the other four of the five appellants, three of whom were infants and had appeared as parties complainant by their respective parents as next friend, were on motion transferred from parties complainant to parties respondent. Later the case was dismissed without trial on its merits. None of these five named appellants filed an answer to the bill in this case or in the pleadings denied the averments made in the answer of the twenty-four beneficiaries and in the answer filed by the Trustee of Christ Episcopal Church alleging that they were parties complainant in the bill to contest the will and charging that they were as much bound by the "no contest" provision as the other beneficiaries.

The preponderance of the oral testimony tends to show that soon after the death of the testator on June 4, 1945, the executors sent each of the legatees and devisees a copy of the will, including the codicils; that between the date of the testator's death and the institution of the suit on May 16, 1947, to contest the will there were numerous family conferences of all the legatees and devisees in which their rights under, and the validity of, the will were fully discussed and all agreed to institute legal proceedings to contest its validity. One of the testator's sons said: "We had been discussing at length the will at breakfast, dinner and supper."

What activity or participation constitutes a contest or attempt to defeat a will depends upon the wording of the "no contest" provision and the facts and circumstances of each particular case. The general rule is that "a resort to the means provided by law for attacking the validity of a will amounts to a contest, although the contestant subsequently withdraws before the final hearing and even though the contestant subsequently treats the will as valid and seeks construction." Page on Wills, Lifetime Ed., Chapter 1306, p. 823; Restatement, § 428, p. 2507; 26 A. L. R. 764; Ann. 5 A. L. R. 1350; 57 Am. Jur., Wills, § 1513, p. 1026.

We find no error in the finding of the trial court that all the

beneficiaries named in the testator's will participated in the contest of the same.

The five appellants' next contention is that the infants who joined in the contest by their respective parents as next friend are not bound by the "no contest" provision in the will.

Code § 8-87 authorizes an infant to sue by his next friend. The practice in Virginia is for such suits to be instituted in the name of the infant by one of the parents or other near relative without formal appointment. If the suit or action proceeds without objection, it is a recognition by the court that the infant is a party to the proceeding. In *Kirby* v. *Gilliam*, 182 Va. 111, 28 S. E. 2d 40, it was held that the consent of the infant was not necessary for a suit to be maintained in her name by her next friend. In numerous cases we have held that in absence of fraud an infant is as much bound by a decree or judgment of a court as is an adult. The law recognizes no distinction between a decree against an infant and a decree against an adult, and, therefore, an infant can impeach it only upon grounds which would invalidate it in case of an adult party. *Harrison* v. *Wallton*, 95 Va. 721, 30 S. E. 372; *Gimbert* v. *N. S. R. R. Co.*, 152 Va. 684, 148 S. E. 680.

Whether an infant beneficiary is bound by the "no contest" provision in a will has not been decided in express terms in Virginia, and the decisions of the courts on the question in other states are not in accord. Some authorities declare that the "no contest" provision is invalid and unenforceable as against public policy when applied to gifts to infants. 57 Am. Jur. Wills, § 1512, p. 1026; *Bryant* v. *Thompson*, 59 Hun. 545, 14 N. Y. S. 28, 128 N. Y. 426, 28 N. E. 522, 37 N. Y. St. Rep. 431.

Other authorities hold that the "no contest" provision in a will is as binding upon an infant beneficiary as it is upon an adult. Persuasive reasons for this view are stated in *Moorman* v. *Louisville Trust Company*, 181 Ky. 30, 43, 203 S. W. 856, 181 Ky. 566, 205 S. W. 564, as follows: "It is not so easy to comprehend the argument that to ascertain whether or not a conditional devise is against public policy it must first be learned who is affected thereby, and that a testator, because of good morals or a sound public policy, may attach a condition to a gift to his adult child that he may not attach to a gift by the same instrument to his infant child. If such should be declared to be the law, no person, no matter how perfect his mind, could prevent a contest of his will by the objects of his bounty, some of whom were infants, no matter how sound his reasons for so de-

siring might be considered, if some next friend regarded the provision made for the infant unfair or a provision for the infant's issue unwise; and the practical result of such a decision would be that a person without infant dependents could exercise a control over the disposition of his property that another with such dependents could not. The rule is universal that infants are bound, just as adults are bound, by judgments in actions prosecuted in their names and for their supposed benefit in the manner prescribed by law, even though the result might prove the action unwise and not for their good; and we cannot believe that public policy demands they shall not be responsible likewise for the legal consequences of such action. We are convinced that whatever the true doctrine with reference to such clause, it must apply alike to all."

In *Alper* v. *Alper*, 2 N. J. 105, 115, 65 A. 2d 737, 741, 7 A. L. R. 2d 1350, 1357, it is said that "the condition [no contest provision] is also enforceable against the infant grandchildren. The testator so willed; and there is no consideration of policy which forbids nonenforcement of the provision. It is in no sense a punitive measure, but a device or bequest upon condition subsequent with a gift over, and therefore an executory limitation. Upon the happening of the prescribed contingency, the gift over becomes effective. The grandchildren take the estate provided by the will, neither more nor less." *Rudd* v. *Searles, supra; Old Colony Trust Co.* v. *Wolfman*, 311 Mass. 614, 42 N. E. 2d 574 (1942); *Harrison* v. *Foote*, 9 Tex. Civ. App. 576, 30 S. W. 838; *Perry* v. *Rogers, supra.*

George F. Parramore, Sr., the testator, in his early life had been a practicing attorney. No one knew better than he that he had named in his will seven infant beneficiaries. In imposing the condition he made no distinction between his adult and his infant beneficiaries. He stated the condition in his will as follows: "I have endeavored to distribute fairly and impartially all of my estate among my children and my deceased son George F. Parramore, Jr's., children, and as it seems best for their interests. I sincerely hope that each of them will receive as I have given unto them, but if any one or more of them should contest my will, I hereby expressly revoke any provisions herein made for the one or more so contesting my will, and the share the contestant would have received shall revert to my estate. Any charge of any kind brought against my estate by any beneficiary, the one so making such a claim shall forfeit any benefit herein made for him or her."

If the testator had desired to except his infant beneficiaries from the "no contest" provision he could have very easily used appropriate language to that end. He did not do so. On the contrary, in making the "no contest" provision applicable to all his beneficiaries, he used the following all inclusive language: "Should *all my legatees and devisees contest* my will, then my entire estate shall pass to Christ Episcopal Church in Eastville." (Italics supplied)

The court is not concerned with whether an heir or a devisee receives the property of a decedent. The normal freedom of the owner to dispose of his property as he sees fit should not be curtailed unless the disposition violates some rule of law or is against public policy. Where the language is clear and unambiguous, it is the duty of the court to give force and effect to the intention expressed by the testator and carry out the objects desired by him in disposing of his property. If the court held the "no contest" paragraph valid as to adults and invalid as to infants, it would be making a new and different will for the testator, and one contrary to his clearly expressed intention to restrain both the adult and infant beneficiaries from making a public exposure of essentially private and personal matters.

None of the other three assignments of error was raised in the lower court. There is no merit in them even if they had been, and for reasons stated they will not be discussed.

The decree of the lower court is

*Affirmed.*