Syllabus.

𝔅𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

FIFIELD AND OTHERS *v.* VAN WYCK'S EXECUTOR AND OTHERS.

April 15, 1897.

1. WILLS—*Conversion of real estate—Residuary clause—Right of heir who is legatee to contest.*—If it appears that the purpose for which an executor is authorized to sell the real estate of a testator is to carry into effect the provisions of the will, although the will contains a residuary clause disposing of the entire residuum of the estate, real and personal, yet the heir of the testator who is also a legatee under the will may contest the validity of the residuary clause of the will, and in the event of an adverse decision may appeal from it. The real estate, though sold and converted into money, retains its character of real estate for the purposes of the suit.

2. WILLS—*Right of heir, legatee, to attack residuary clause—Estoppel.*—A legatee who is also heir of the testator is not estopped by accepting payment of the legacy from attacking the validity of the residuary clause of the will, when the provisions of the will are such as neither require an election on his part, nor amount to a condition annexed to the legacy.

3. WILLS—*Clause against contesting—In terrorem—Gift over.*—A condition in a will annexed to a bequest of personal estate, declaring the legacy forfeited if any attempt is made to set aside the will or to cause litigation over it, where there is no gift over upon breach of such condition, is merely *in terrorem* and inoperative. And a provision in a will that the legacy to the contesting legatee shall revert to the estate of the testator is not a gift over within the meaning of the rule.

4. WILLS—*Charities—Vagueness and uncertainty—Case at bar.*—A devise to two trustees, or to " the survivor of them or to whomsoever they may select in case of their death, in trust for the benefit of the New Jerusalem church [Swedenborgian] as they shall deem best," is too vague and indefinite to be enforced by a court of equity, and is therefore void. There is nothing either in the will, or in the extrinsic evidence, which shows that the claimant corporation, "The General Convention of the New Jerusalem in the United States of America," was intended to be either the beneficiary, or the agency by which it was to be administered.

5. EPISCOPAL EDUCATION SOCIETY *v.* CHURCHMAN, AND TRUSTEES &C. *v.* GUTHRIE, EXPLAINED—*Dicta adverse to the decision in Gallego* v. *Attorney-*

*General, 3 Leigh 450, disapproved.*—So much of the opinions in *Episcopal Education Society* v. *Churchman,* 80 Va. 718, and *Trustees &c.* v. *Guthrie,* 86 Va. 125, as discussed the jurisdiction of courts of chancery over charities at common law; how far, if at all, 43 Elizabeth was in force in this State; and the decision in *Gallego* v. *Attorney-General,* and the cases which followed it, and recognized and reiterated the principles of that case as to indefinite charities, except so far as they had been changed by the Legislature, were wholly unnecessary to the decision of those cases, and therefore must be regarded as mere *obiter dicta,* and not binding upon the court, which is unwilling to hold that a line of decisions running back over a period of more than fifty years were thus overturned. If further changes are necessary or desirable upon the subject, the Legislature, and not the courts, should make them.

Appeal from two decrees of the Court of Law and Chancery of the city of Norfolk, pronounced February 20, 1896, and June 9, 1896, in a suit in chancery wherein the appellee William W. Old, executor of Lenore M. Van Wyck, was the complainant, and the appellants and others were the defendants.

*Reversed.*

The only clauses of the will bearing on the subject of controversy are the *fourteenth* and *fifteenth.* They are as follows:

"Fourteenth. All the rest and residue of my said estate, real and personal, wherever situate and of whatever kind, I give, devise and bequeath to the Reverend S. S. Seward, of New York city, and to the Rev. J. C. Ager, of Brooklyn, State of New York, or the survivor of them, or to whomsoever they may select in case of their death, in trust, for the benefit of the New Jerusalem Church (Swedenborgian) as they shall deem best, which rest and residue I hereby instruct my executors to pay over to them as soon as they can without sacrificing any property, and I desire that no bond be required of said trustees, or either of them.

"Fifteenth. I hereby appoint as my executors, H. DuBois Van Wyck, of the city of Norfolk, in the State of Virginia,

and W. W. Old, of the said city and State, or survivor of them; and request the courts in which they may qualify, to allow them to do so without giving any security; and I hereby empower and authorize my said executors to sell my real estate, or any part thereof, wherever situate, and to execute deeds therefor, and do all things by converting my said estate into money or otherwise, which may be necessary to carry into effect the terms and provisions of this will.''

A codicil annexed to the will contains the following clause:

''If any attempt be made by any person whom I have remembered in my will to set aside the same or any part thereof, or cause any litigation in any way over the same, they shall forfeit any bequest I have made to them in my said will and the same shall revert to my estate.''

The other facts sufficiently appear in the opinion of the court.

*Staples & Munford* and *L. L. Lewis,* for the appellants.

*Tunstall & Thom,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This controversy arises under the residuary clause of the last will and testament of Lenore M. Van Wyck, late of the city of Norfolk.    After making a number of specific bequests the testatrix declares that ''all the rest and residue of my said estate, real and personal, wherever situate, and of whatever kind, I give, devise, and bequeath to the Reverend S. S. Seward, of New York city, and to the Rev. J. C. Ager, of Brooklyn, State of New York, or the survivor of them, or to whomsoever they may select, in case of their death, in trust for the benefit of the New Jerusalem Church (Swedenborgian) as they shall deem best.    *    *    *    ''

The executor filed his bill to have certain clauses in the will

construed, and the validity of the residuary clause determined
by the court.    To that bill the trustees named in the residu-
ary claused filed their answer, in which they stated that the
New Jerusalem Church was the general name by which,
among themselves, that body of Christians who accept the
teachings of Emmanuel Swedenborg (popularly called Swe-
denborgian) were known during the life and at the death of
the testatrix; that the legal and representative general agency
of the New Jerusalem Church for the purpose of receiving,
and taking by gift, devise or otherwise, property, real and
personal, for educational or religious purposes was "The Gen-
eral Convention of the New Jerusalem in the United States
of America," a corporation chartered under the laws of the
State of Illinois; that this corporation was, during the life-
time of the testatrix, the only legal and representative agency
of the general body of Christians in the United States known
as the New Jerusalem Church; that the testatrix was during
her life time a firm and consistent member of that church,
and manifested great interest in and contributed largely to
the spreading of its doctrines, and had, as respondents were
informed, expressed her intention of leaving her residuary
estate to the said church for religious and educational pur-
poses; that they were, during the lifetime of the testatrix
and are now, members of the executive committee or general
council of that corporation, and that by its charter (a copy
of which is filed with the answer as an exhibit) it is provided
that the business affairs of the corporation shall be managed
and controlled by such committee or council, subject to the
direction of the convention when in session, and that they are
advised and believe that the residuary bequest to them in
trust "for the benefit of the New Jerusalem Church (Sweden-
borgian)" is, and was intended by the testatrix to be, a be-
quest to them in trust for the benefit of the "General Con-
vention of the New Jerusalem in the United States of
America."

That corporation by petition became a party to the suit, and in its answer claimed that the bequest was intended for its benefit, and as a ground for its claim made substantially the same statements as those made by the trustees in their answer. Parol evidence was taken to prove the averments contained in the answers, and, upon a hearing of the cause, the trial court held the bequest to be valid and declared that "The General Convention of the New Jerusalem Church in the United States of America" was the intended beneficiary, and so decreed.

From that decree this appeal was taken by some of the heirs of the testatrix, who were also legatees under the will.

Their right to appeal is denied on several grounds which will now be considered.

The first is that the appellants would have no interest in the property disposed of by the residuary clause of the will, even if it were held to be invalid, but that it would pass as personal estate to the husband of the testatrix.

By the fifteenth clause of the will the executors were authorized to sell the real estate of the testatrix, or any part thereof, wherever situated, and to execute deeds therefor, and do all things, by converting the estate into money or otherwise, which might be necessary to carry into effect the provisions of the will.

It is apparent that the purpose for which the executors were authorized to sell the real estate or any part thereof was to carry into effect the provisions of the will, and that the testatrix directed its conversion into money in order that it might be applied conveniently in the manner directed by the will and for no other purpose. "For," as is said by Mr. Jarman, "every conversion, however absolute in its terms, will be deemed to be a conversion for the purposes of the will only, unless the testator distinctly indicates an intention that it is, on the failure of the purposes, to prevail as between the persons on whom the law casts the real and personal estate;

namely, the heir and the distributee.''   1 Jarman on Wills, top page 624 (5th Amer. ed., Bigelow).   And it seems to be established by the weight of authority that, where a testator directs his real estate to be sold, and the mixed fund arising from the proceeds of the realty and personalty to be applied to certain specified purposes, if any part of the disposition fails, either because void *ab initio* or by lapse, then in proportion to the extent or amount which the real estate would have contributed to that disposition, the proceeds thereof retain the quality of real estate for the benefit of the heir, although the real estate has been in fact sold, and the money when paid over to the heir, has in his hands the character of money and no longer the character of real estate.   *Bective* v. *Hodgson,* 10 House of Lords cases, 656, 666-7 (Lord Chancellor Westbury); *Shallcross* v. *Wright,* 12 Beavan 505, 508; 1 Williams on Executors, 787 (7th Amer. ed.); Jarman on Wills, (5th Amer. ed., Bigelow) 632; *Gallagher &c.* v. *Rowan's Adm'r,* 86 Va. 823, 825.   This objection cannot be sustained.

Although the appellants accepted payment of the bequests made to them in the will, with full knowledge of all the facts, they are not estopped, as the appellees insist, from attacking the validity of the residuary clause, on the ground that having elected to take under the will they are bound to give full effect to all its provisions, and to renounce every right inconsistent with it.   The provisions of the will were not such as to require an election on the part of the appellants.

The testatrix did not attempt to dispose of any property right of the appellants.   There was nothing, therefore, for them to elect to give up in lieu of what she bequeathed them. 1 Pom. Eq. Jur., sec. 472; 2 Williams on Executors, (7th Amer. ed.), top page 767; 1 Jarman on Wills (5th Amer. ed., Bigelow), 443, 451; 2 Redfield on Wills (3d ed.), side page 352.

The authorities cited to show that this was a case for elec-

tion were cases where the legatee had taken his legacy with
a condition annexed, and, as Mr. Pomeroy says, were not
properly cases of election. 1 Pom. Eq. Jur., sec. 483.   In
such cases, if the condition annexed is one that is operative
and the legatee accepts the legacy, he is of course estopped
by his own act from afterwards insisting on rights which by
the terms of the condition he is bound to release, or from de-
clining a duty which he is thereby required to perform.   2
Jarman on Wills, 60.

This brings us to the consideration of the next and last
ground of objection to the right of appellants to maintain this
appeal.

By a codicil to the will it is provided that any legatee who
attempts to set aside the will, or any part thereof, or to
cause litigation over it, shall forfeit his legacy, and that it
shall revert to the estate.   The appellants accepted payment
of their legacies.   By this act they are estopped, appellees
insist, from questioning the validity of the will, or any part
of it.

Conditions relating to marriage and disputing a will, when
annexed to bequests of personal estate, where there is no gift
over upon breach of such condition, are generally considered
as *in terrorem* merely, and inoperative.   This *in terrorem*
doctrine, which is only admitted in these two classes of cases
(2 Jarman on Wills, 60), although not based upon any satis-
factory reason, was firmly fixed in the law of England at an
early day.   2 Jarman on Wills, 45, 58, &c.; 2 Williams on
Executors, p. 585-6; 2 Pom. Eq. Jur., sec. 933; 1 Lomax
Digest (2d ed.) 341; 2 Minor's Inst. (4th ed.) 286-7; *Scott* v.
*Tyler*, 2 Leading Cases in Equity, 429, &c., and notes.   In
this State, in the case of *Maddox* v. *Maddox*, 11 Gratt. 804,
where the condition related to marriage, the doctrine was ap-
plied without being questioned by the court.   See also the
case of *Phillips* v. *Ferguson*, 85 Va. 509, 513.   It must,
therefore, be regarded as settled that such conditions are

merely *in terrorem*, and inoperative, when annexed · to bequests of personal estate, where there is no gift over upon breach of the condition.

I was inclined to the opinion at first that the direction in the will that the legacies should revert to the estate of the testatrix upon breach of the condition was such a giving over when considered in connection with the residuary clause, as would render the condition operative, but a more careful examination of the authorities satisfies me that such is not the case. *Maddox* v. *Maddox*, 11 Gratt. 804, 810, and cases cited; 1 Roper on Legacies, marg. page, 796; 2 Lomax on Executors, top page 155.

None of the objections made to the right of the appellants to take this appeal can be sustained.

The question whether the residuary clause of the will is valid or not will now be considered.

Its validity is attacked upon the ground that the trust created by it is so vague and indefinite that it cannot be enforced by a court of equity. This is denied by the appellees, who insist (and the trial court so held) that the bequest was intended for "The General Convention of the New Jerusalem in the United States of America," a corporation chartered under the laws of the State of Illinois, and for purposes within its corporate powers. Parol evidence was taken to show that the corporation named was the intended beneficiary. That evidence is objected to because it is claimed that there was no such ambiguity in the will as rendered parol evidence admissible to show the intention of the testator. That objection was not made to the court below, and it is insisted that it is too late to make it here for the first time.

In the view we take of the case it is unnecessary to pass upon either of those questions.

Prior to 1861 a large portion of that body of Christians known as the New Jerusalem Church was accustomed to meet annually in convention. Those conventions were not incor-

porated.   In the year 1861, recognizing the desirability and necessity for an agency of the church at large, whereby money and property contributed by those who had the interests of the church at heart could be held and controlled, the corporation named was organized.   Its charter gives it the "power to receive and take by gift, purchase, devise, or otherwise, property and estate, real, personal, or mixed, for educational or religious purposes, and to hold, lease, and sell or convey the same at pleasure."   It is not contended (but denied) by the appellees that this was an incorporation of the New Jerusalem Church.   The claim is that it is the general agency and legal representative body of the church to take, hold and dispose of property for educational and religious purposes.   This is not a case where there has been some slight misdescription in the corporate name of the testator's bounty, where parol evidence is admissible within certain limitations to identify the legatees, but it is a case where the object of his bounty, although a voluntary association, is correctly described in the bequest, and the general agency of the association claims that the bequest was intended for it.

The parol evidence, it is true, shows that testatrix on several occasions attended the annual meetings of the general convention, &c., which was the representative body of the New Jerusalem Church, and that the trustees named were members of the "executive committee" or "general council" of the general convention, as well as ministers in the New Jerusalem Church, but there is no evidence that the testatrix knew that the general convention, &c., was an incorporated body with power to take and hold property for the church, or that she knew that the trustees were members of the "executive committee" or "general council" of the corporation.   On the contrary, it appears that she had a personal acquaintance with each of the trustees; one of them, the Rev. Mr. Ager, was for some time treasurer of the New York association of the New Jerusalem Church, and for a number of years she

was a subscriber to a fund in his hands for missionary work
in New York city, and vicinity; the other, the Rev. Mr.
Seward, was at one time President of the Ohio Urbana Uni-
versity, an educational institution of the New Jerusalem
Church, and whilst he was President she had contributed
generously to it.

The omission to name the corporation claiming the fund,
or to devote the bequest specially to the purposes (viz., edu
cational and religious) for which it was authorized to take
and hold property, and leaving the administration of it en-
tirely to the discretion of the trustees named would seem to
show clearly that the testatrix either did not know that "The
General Convention of the New Jerusalem, &c.," was the
agency or representative of the church to take and hold prop-
erty for it, or if she did know it, that she did not desire to
leave her gift to that corporation to be administered by it,
but preferred an agency of her own selection.    The terms of
the bequest itself show that it was her intention that the fund
given should be managed by the trustees named, "or the sur-
vivors of them and whosoever they shall select in case of their
death."    Her confidence in the integrity and wisdom of the
trustees selected (through whom she had theretofore made
donations for the benefit of the church) was such that she
directed that no bond should be required of them, and gave
them absolute discretion to administer the fund as they
deemed best for the benefit of the church of which she was
a member.

In the case of *Wheeler* v. *Smith*, 9 How. 55, where the
bequest was made to the trustees for such purposes as they
considered might prove to be most beneficial to the town and
trade of Alexandria, it was argued, as here, that the testator
intended to give the town of Alexandria, in its corporate ca-
pacity, the residue of his estate; but the court in passing upon
that question, Mr. Justice McLean delivering the opinion,
said the testator did not so express himself.    "On the con-

trary it clearly appears that the executors" [trustees] "were made the representatives of his confidence, and the only persons who were authorized to administer the trust."

There is nothing in the will nor in the extrinsic evidence which shows that the corporation claiming the bequest was intended to be either the beneficiary, or the agency by which it was to be administered. The bequest must, therefore, be considered as made for the benefit of a voluntary association, and not to or for the benefit of a corporation.

Is the trust so vague and indefinite that it cannot be enforced by a court of equity? If so, it must be held invalid. Trustees are named, but the beneficiaries are uncertain. Is the trust for the benefit of all the members of that church, wheresoever they my be, in this and other countries, or is it limited to those in the United States, or to such as live in this State where the testatrix had her domicile, or to those in the State of New York where the trustees reside? The purposes of the trust are wholly undefined, and the discretion vested in the trustees unlimited, except that the fund must be used for the benefit of the New Jerusalem Church. If the trustees are unable, or for any reason fail to act, it is difficult to see how a court of equity could enforce it. It could not well control their discretion, or exercise the power conferred in their place or stead.

The bequest in this case is as indefinite as that in the case of *Wheeler* v. *Smith*, cited above, and in reference to which Justice McLean said: "Under this devise how can a court of chancery correct an abuse of the trust? By what means shall it ascertain the misapplication of the fund? There is nothing to restrain the discretion of the trustees, or to guide the judgment of the court. If the trust can be administered it must be administered at the will of the trustees, free from all legal obligation." Again he says: "How can a court of chancery administer the trust? On what ground can it remove the trustees for an abuse of it? The discretion of the

trustees may be exercised without limitation, excepting that the fund must be applied for the benefit of the town and trade of Alexandria. And, if the application of the fund be ever so remotely connected with the objects of the trust, the judgment of the court could not be substituted for the discretion of the trustees. It is doubtful whether so vague a trust could be administered under 43d Elizabeth. Without the application of the doctrine of *cy pres* it could not be carried into effect."

The decisions in the cases of the *Episcopal Education Society* v. *Churchman*, 80 Va. 718, and of *Trustees, &c.* v. *Guthrie*, 86 Va. 125, are relied on to sustain the validity of this bequest. There was no such question involved in either of those cases as is involved in this.

In the *Churchman Case* the question for decision was whether a bequest to "The Trustees of the Protestant Episcopal Educational Society of Virginia," which was to be used exclusively for educating poor young men for the Episcopal ministry upon the basis of evangelical principles as now established, was valid.

In the *Guthrie Case* the question was whether a bequest to the secretary of the board of foreign missions of the Presbyterian church in the United States, was invalid.

The record in each case showed, in the opinion of the court, that the bequest was to a corporation, and for purposes within the scope of its corporate powers and duties, and distinctly defined. In those cases the beneficiaries were certain, the purposes of the trust clearly defined, and within the corporate powers of the legatees. In this case, as we have seen, the beneficiaries are uncertain, the purposes of the trust wholly undefined, and the discretion of the trustees practically without limit.

It is not contended that this bequest could be held valid under the decisions of this court prior to the *Churchman Case*. Those decisions, however, it is claimed, overturned

the case of *Gallego* v. *Attorney General*, 3 Leigh 487, and all the numerous cases since decided which recognize and reiterate the principles of that case, except in so far as they had been changed by the Legislature. It is true that there is much in the reasoning of the judge who delivered the opinion of the court in those cases to sustain that contention, and that the opinions disapprove those decisions, but there was no necessity for any expression of opinion upon the subject. The opinion in the *Churchman Case* expressly states that "the law which must govern this case is found in sections 2 to 10 of chapter 77 of the Code of 1873, especially the second section * * * ," and holds that under those provisions of the Code the bequests in that case were valid. See pages 759 to 761. So far as the decision of that case was concerned, it was a matter of no consequence what the jurisdiction of a court of chancery was at common law, or under 43d Elizabeth. This is admitted in the opinion when it comes to discuss those questions. The judge says: "In entering upon this enquiry," (the jurisdiction of courts of equity over charities at common law), "one of grave public importance, it becomes proper to review the doctrine laid down in *Gallego* v. *Attorney General.* This, however, will not be done because it is essential to a proper determination of the question involved, but because that case is confidently relied on as governing this case and because public interests demand that the doctrine laid down in that and certain later cases the same way should be definitely settled, at least in so far as it is affected by legislation subsequent to that decision."

In the case of *Trustees* v. *Guthrie,* the court held that the beneficiary in the bequest the validity of which was attacked was not uncertain and unknown as claimed, but was a corporation chartered under the laws of the State of North Carolina, and that the purposes of the bequests were within the powers and duties of the corporation. Having determined that the beneficiary was certain and the purposes of the trust

within the corporate powers and duties of the beneficiary, there was no necessity for deciding what the law would have been if the beneficiary had been uncertain and the trust undefined, and this seems to have been the position of the judge delivering the opinion, for he says, after having disposed of that question: ''And this being the only question raised by the pleadings and evidence in the cause, the case might appropriately end at this point, with a decree reversing the decree of the court below and establishing the validity of the bequest. But in the argument here new propositions are advanced, and they are both novel and untenable.''

It is evident that in both these cases so much of the opinions as dicussed the jurisdiction of courts of chancery over charities at common law, how far, if at all, 43d Elizabeth was in force in this State; and the decisions in *Gallego* v. *Attorney General*, and the cases which followed it and recognized and reiterated the principles of that case as to indefinite charities, except so far as they had been changed by the Legislature, were wholly unnecessary to the decision of those cases, and therefore must be regarded as mere *obiter*, and not binding as pre cedents upon this court. Their *dicta* announce views contrary to a long line of decisions of very able judges, and although their decisions may have been based upon erroneous views as to the powers of courts of chancery over charities at common law, and as to the extent to which the statute of 43d Elizabeth had been or was in force in this State, still those decisions have settled the law upon the subject, except as changed by the Legislature from time to time.

We are unwilling to hold that this line of decisions, running back over a period of more than fifty years, was overturned by expressions of opinion in the *Churchman* and *Guthrie Cases*, not necesary to their decision. If further changes are necessary or desirable, upon the subject, the Legislature, the law-making power, and not the courts, should make them.

We are of opinion, therefore, that the residuary clause of the will of the testatrix is void for uncertainty, and that she died intestate as to the property which she attempted to dispose of by it; that the decrees appealed from, so far as they held that clause to be valid and directed the fund embraced in it to be paid over to the trustees named therein, should be reversed, and the cause remanded to the Court of Law and Chancery of the city of Norfolk, with direction to distribute the fund between the heirs and the distributees of the testatrix, giving the heirs such proportion of the fund as the real estate bore to her whole estate, and to the distributee such proportion as the personal estate bore to her whole estate.

We regret that we have been compelled to hold this bequest invalid, for it is always painful to see the cherished and praiseworthy wishes of a testator disappointed.

*Reversed.*