PRESENT: All the Justices

CHARLES M. HUNTER, JR.

v. Record No. 190260

OPINION BY
JUSTICE D. ARTHUR KELSEY
MARCH 12, 2020

ELEANOR A. HUNTER, IN HER
CAPACITY AS TRUSTEE OF THE
THIRD AMENDED AND RESTATED
THERESA E. HUNTER REVOCABLE
LIVING TRUST AGREEMENT, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF
WILLIAMSBURG AND JAMES CITY COUNTY
Michael E. McGinty, Judge

A beneficiary of a living trust filed a declaratory judgment action seeking a judicial interpretation of two provisions of the trust. In response, the trustee filed a counterclaim seeking a declaratory judgment that the beneficiary's action had violated the no-contest provision of the trust and that, as a result, the circuit court should revoke the beneficiary's interest in the trust. Following a hearing on the trustee's motion for summary judgment on the counterclaim, the circuit court ruled in favor of the trustee and dismissed the beneficiary's action with prejudice. On appeal, the beneficiary argues that the court erred. We agree, reverse the summary judgment, and remand the case for further proceedings.

I.

Charles and Theresa Hunter married in 1953 and had two children, Charles ("Chip") and Eleanor, and one granddaughter. Charles and Theresa created separate revocable living trusts in 2010 and 2011, respectively. Charles's trust named Theresa as the primary beneficiary, and Theresa's trust (the "Theresa Trust") named Charles as the primary beneficiary. Both trusts named Chip, Eleanor, and the trustee of the granddaughter's trust as equal contingent beneficiaries. When Charles died in 2013, all assets in his trust passed outright to Theresa free

of any trust. The Theresa Trust provided that upon the death of both Charles and Theresa, Chip would receive one-third of the trust assets minus the value of certain loans previously extended to him and that Eleanor and the trustee of the granddaughter's trust would also each receive one-third of the trust assets. The Theresa Trust named Theresa and Eleanor as initial co-trustees, and if Theresa ever became unable or unwilling to serve as trustee, Eleanor would be the sole trustee. *See* J.A. at 252. Chip alleged that "[o]n or after the time that Eleanor began serving as trustee of the Theresa Trust," Theresa became incapacitated and "lacked the capacity to revoke the Theresa Trust." *Id.* at 5.

After Theresa died in 2015, Chip received a brokerage account statement from his sister that allegedly showed a decline in the value of trust assets from $4.25 million to $1.77 million over the course of less than 6 years, which was during a period in which stock values had steadily risen across most market sectors. Chip requested additional information from his sister, including a full financial report of trust property that detailed receipts, disbursements, liabilities, trustee compensation, and asset valuations. According to Chip, Eleanor's counsel refused to provide the additional information in reliance on a trust provision stating that the settlor "waive[d] the Trustee's formal requirements to inform and report set forth under Section 55-548.13 of the Code of Virginia," *id.* at 256.[1]

Chip filed this declaratory judgment action, seeking a favorable interpretation of the trust that would require Eleanor to provide Chip with information and documents related to the trust.[2]

---

[1] In 2012, the General Assembly repealed Code § 55-548.13 and recodified its language in current Code § 64.2-775 without any substantive amendments. *See* 2012 Acts ch. 614, at 1226-27.

[2] Chip's complaint sought a judicial interpretation of both Charles's trust and Theresa's trust. The circuit court's final order stated that, as a matter of law, Chip's declaratory judgment action contested the inform-and-report waiver provisions of both Charles's and Theresa's trusts and, as a result, ultimately violated the no-contest provision of the Theresa Trust. On appeal,

2

Aware of the no-contest provision in the Theresa Trust, Chip divided his declaratory judgment complaint into two carefully worded counts. Count II acknowledged the ultimate goal of the litigation by asserting that Chip sought the "determination of the rights of Chip and Eleanor" under the terms of the Theresa Trust to require the trustee to inform and report under Code § 64.2-775, other various provisions of the Virginia Uniform Trust Code, or stand-alone principles of common law and equity jurisprudence. The rationale behind Count II, as Chip explained to the circuit court in a subsequent brief, was that he interpreted the language of the inform-and-report waiver provision to only apply to the duty to inform and report under former Code § 55-548.13 and to have no effect on what he interpreted as freestanding inform-and-report duties arising under other sources of law. *See* R. at 177-85. Based upon prior communications with Eleanor's counsel, Chip understood Eleanor's position to be that the waiver provision relieved her of any and all inform-and-report duties.

The complaint expressly sought to create a firewall protecting Count I from any uninvited, premature consideration of Count II. Prior to the complaint's allusion to the competing interpretations of the inform-and-report waiver provision, Count I requested that the circuit court "initially determine" whether determining Chip's and Eleanor's rights and duties under the trust "would constitute a 'contest'" under the no-contest provision, thereby triggering the forfeiture of Chip's beneficial interest in the trust. J.A. at 3. Count I stated that the court should consider the request in Count II "if, and only if," the court interpreted the no-contest provision to be inapplicable. *Id.* Relying on our decision in *Virginia Foundation of Independent Colleges v. Goodrich*, 246 Va. 435 (1993), the complaint insisted that it sought "no further relief

---

however, Chip's assignments of error only address the court's ruling that he had violated the no-contest provision of the Theresa Trust. We thus limit our discussion in this opinion to the Theresa Trust.

3

than that which has been held by the Virginia Supreme Court . . . to permit a beneficiary to file a declaratory judgment action seeking an interpretation . . . without such conduct being held to fall within the scope of a no contest clause and/or actuating a no contest clause." J.A. at 3. In Count I, Chip contended that he "merely [sought] an interpretation of the language of the Trusts with respect to the rights and duties of Chip and Eleanor," and thus, Count II did not trigger the application of the no-contest clause. *Id.* at 11.

Eleanor responded by filing a counterclaim seeking a declaratory judgment that Chip's complaint, when read as a whole, constituted a contest of the Theresa Trust — thereby triggering the self-executing forfeiture of Chip's entire beneficial interest in the trust. As Eleanor read the complaint, Chip was not truly requesting an interpretation but rather was attempting to avoid the effect of the inform-and-report waiver provision, and thus, Chip was contesting a material term of the trust.

When Eleanor filed a motion for summary judgment on her counterclaim, Chip added an alternative argument in his brief in opposition. Assuming that the court determined (incorrectly, Chip contended) that no independent duties compelled the trustee to inform and report to beneficiaries outside of the statutory duty expressly waived by the trust, then both the inform-and-report waiver provision and the no-contest provision were either "not valid under law" or "void [as] against public policy." *See* R. at 181-86.[3]

---

[3] This alternative argument was inconsistent with Chip's complaint, in which he expressly disclaimed "contest[ing] the Theresa Trust, or any provision of the Theresa Trust," J.A. at 10, and contended that he was "merely seek[ing] an interpretation of the language of the Trusts" in light of alleged inform-and-report duties independent of those waived by the Theresa Trust, *id.* at 11. Chip's complaint does not purport to make any arguments that the trust provisions are void as against public policy or invalid under law — a point that will become pertinent later in our analysis. *See infra* at 19-20.

4

Granting summary judgment to Eleanor on her counterclaim, the circuit court agreed with her characterization of Chip's complaint, declared that Chip's beneficial interest in the trust was revoked, and directed Chip to pay Eleanor's attorney fees. Chip's declaratory judgment complaint, the court ordered, was "dismissed with prejudice in its entirety." J.A. at 147. The court did not mention or address the alternative argument raised solely in Chip's brief in opposition. Given the circuit court's ruling that Chip's complaint contested the trust, it did not address Chip's arguments on the proper interpretation of the inform-and-report waiver provision.

## II.

On appeal, Chip asserts seven assignments of error challenging the circuit court's final order. We hold that one of his arguments — challenging the court's application of the no-contest clause to his complaint — is dispositive for purposes of this appeal. On this limited ground, we reverse the circuit court's summary judgment and remand the case for further proceedings.

### A. IN TERROREM PROVISIONS

Over the centuries, individuals contemplating death have said various things in their wills to strike terror into the hearts of anyone seeking to undermine their testamentary intent. In ancient times, the terror was quite real, as the contester could be cast out of the family and lose its protection. A Mesopotamian will from the thirteenth century B.C. declared that the disgruntled beneficiary must "set his cloak upon the doorbolt" and then "depart into the street" as his more respectful brother acquired the entire inheritance. Gerry W. Beyer et al., *The Fine Art of Intimidating Disgruntled Beneficiaries with In Terrorem Clauses*, 51 SMU L. Rev. 225, 231 (1998) (quoting 2 The Ancient Near East: A New Anthology of Text and Pictures 80 (James B. Pritchard ed., 1975)).

English common law brought many changes to the law of inheritances but did not preclude the use of in terrorem provisions, though most in terrorem provisions contained mere admonitions of doom rather than outright forfeiture penalties. *Id.* at 232 (discussing tenth-century and eleventh-century wills warning the contester of the "torment of hell" and the "Day of Judgment"). Following the English tradition, American courts have enforced in terrorem provisions that seek to disinherit a beneficiary who contests a will or trust.[4] The leading early precedent, *Smithsonian Institution v. Meech*, relied on the concept of equitable "election" that required a beneficiary to elect between taking under an allegedly flawed will or seeking an abrogation of the will and thus taking nothing. 169 U.S. 398, 414-15 (1898). The underlying presumption was that the testator had wanted to "guard against vexatious litigation" while not punishing a beneficiary who merely sought "to ascertain doubtful rights" through a judicial proceeding. *Id.* at 413. Many courts have struggled with the boundaries of this concept because it at once seeks to protect the right of a testator "to dispose of his property as he sees fit," *Womble v. Gunter*, 198 Va. 522, 532 (1956), while not assuming that he wanted to disinherit anyone who questioned exactly how he intended to do so.

---

[4] The use of the expression "in terrorem" was traditionally limited to provisions that merely sought to dissuade a would-be contester from challenging the testamentary document. In this respect, in terrorem provisions were "not, in general, obligatory, but only in terrorem" because "the nonobservance of the conditions" in the provisions would not result in forfeiture. *Smithsonian Inst. v. Meech*, 169 U.S. 398, 413 (1898). In modern cases, the expression "in terrorem" has been expanded generally (depending heavily on the wording of the disputed provision) to denote forfeiture as well as a mere admonition. *See* Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. a (2003) (equating in terrorem provisions to no-contest provisions in the scope of its discussion of no-contest provisions); George Gleason Bogert et al., The Law of Trusts and Trustees § 181, at 286 (3d ed. 2012) (noting that "courts have been called upon to construe these forfeiture clauses also known as in terrorem or no contest clauses").

In Virginia, we believe that the common law honors "the societal benefit of deterring the bitter family disputes that will contests frequently engender." *Keener v. Keener*, 278 Va. 435, 442 (2009) (citing *Womble*, 198 Va. at 526-27). But we also respect the ancient maxim that "equity abhors forfeitures," *Jones v. Guaranty & Indem. Co.*, 101 U.S. 622, 628 (1879), and the maxim applicable to many platforms of legal doctrine, including wills and trusts, that "provisions that require forfeiture are not favored in the law," *Rafalko v. Georgiadis*, 290 Va. 384, 402 (2015). We have reconciled these competing values by stating that no-contest provisions are simultaneously "strictly enforced" and "strictly construed." *Id.*

By strictly enforced, we mean that we will enforce the provision without any wincing on our part concerning its alleged harshness or unfairness — so long as the testator or settlor clearly intended the forfeiture. By strictly construed, we mean that the intent to forfeit must be *very* clear. The language used must "precisely express" the specific intent to cause a forfeiture. *Keener*, 278 Va. at 442-43. Strict enforcement cannot be justified by mere inferences of intent. As in other areas of law, a provision seeking "to sustain forfeiture is construed strictly against forfeiture," and thus, "[t]he instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction," *Davis v. Wickline*, 205 Va. 166, 169 (1964); *see Lewis v. Henry's Ex'rs*, 69 Va. (28 Gratt.) 192, 203 (1877) (acknowledging that a forfeiture will not be sustained "unless it be perfectly *clear* that the *very* case has happened in which it is declared that the interest shall not arise" (emphases in original) (citation omitted)). When engaged in that interpretative process, a Virginia "chancellor will not lift his hand to aid a litigant in enforcing a forfeiture." *Pence v. Tidewater Townsite Corp.*, 127 Va. 447, 459 (1920) (citation omitted). The heavy lifting must be done entirely by the unmistakable language of the drafter of the putative forfeiture provision.

7

The principle of strict construction applies with compounding force to no-contest provisions in trusts. We have recognized that no-contest provisions are prima facie valid in trust instruments just as they are in wills. *See Keener*, 278 Va. at 442. That recognition, however, was of recent provenance. We have yet to address how the unique attributes of trusts should factor into the legal analysis or to consider the distinguishing fact that

> trusts differ from wills because they usually last for an extended period of time and because, during that period, they vest ownership and control of the property in the hands of a trustee. Indeed, the fiduciary relationship between the property's legal owner — the trustee — and the property's beneficial owners is the cornerstone of trust law. The rising use of expansive trust forfeiture clauses is problematic because by disinheriting beneficiaries who seek oversight of this fiduciary relationship, the clauses threaten to forfeit trust altogether.

Deborah S. Gordon, *Forfeiting Trust*, 57 Wm. & Mary L. Rev. 455, 474 (2015) (footnotes omitted).[5] Although Chip advances several arguments in this case that build upon this premise, we need not address the outer boundaries of no-contest provisions in trust instruments. We instead focus our attention on the narrow dispute before us and ask only whether the circuit court correctly ordered the forfeiture of Chip's interest in the Theresa Trust pursuant to this particular trust's no-contest provision.[6]

---

[5] Courts and commentators have struggled with this issue. *See, e.g.*, *Callaway v. Willard*, 739 S.E.2d 533, 536-37 (Ga. Ct. App. 2013); Restatement (Third) of Trusts § 96(2) & cmt. e (2012); Bogert et al., *supra* note 4, § 965, at 108-09 (3d ed. 2010); George Gleason Bogert & George Taylor Bogert, The Law of Trusts and Trustees § 973, at 248-49, 252-53 (2d ed. 1962); Charles E. Rounds, Jr. & Charles E. Rounds, III, Loring and Rounds: A Trustee's Handbook § 5.5, at 436 (2018 ed.); Lynn Foster, *Arkansas's Trust Code and Trust Planning: A Ten-Year Perspective*, 38 U. Ark. Little Rock L. Rev. 301, 342 (2016). Given our narrow holding, we leave for future consideration how, if at all, these observations affect the ultimate scope of no-contest provisions in trust instruments that seek to shelter fiduciary misfeasance or malfeasance.

[6] It is significant that the Theresa Trust provided that Chip's interest, in the event of forfeiture, would be distributed in equal shares to the trustee of the granddaughter's trust and to Eleanor, *see* J.A. at 251. With respect to devises of personal property, English and early American courts required the testator to provide a gift over to another to disaffirm any inference

8

B. The No-Contest Provision in the Theresa Trust

The circuit court held that Chip's declaratory judgment action was a thinly veiled attempt to require Eleanor, in her capacity as trustee, to provide financial data regarding trust property in violation of a trust provision that expressly waived her duty to do so. Viewing the complaint in its totality, the court concluded that it violated the no-contest provision and thereby triggered a complete forfeiture of Chip's interest in the Theresa Trust.

On appeal, Chip contends that the circuit court's holding started at the end, not the beginning, of the proper analysis. The court characterized Count II, which Chip claimed was merely a request for a judicial interpretation of the inform-and-report waiver provision, as a request to judicially render the provision unenforceable or to avoid the effect of the provision. From there, Chip argues, the court erroneously backed into Count I and found that Chip's request to judicially render the waiver provision unenforceable had violated the no-contest provision. The court then enforced the no-contest provision and ordered the forfeiture of Chip's interest in the Theresa Trust.

Chip reasons that the correct analysis should have begun with Count I, which sought an interpretation of the no-contest provision to determine if Count II would violate that provision.

that the forfeiture provision was merely in terrorem and that the testator had merely "intended only to frighten the beneficiary to comply." Martin D. Begleiter, *Anti-Contest Clauses: When You Care Enough to Send the Final Threat*, 26 Ariz. St. L.J. 629, 649 (1994). In *Womble v. Gunter*, we observed that the gift-over rule had been "disregarded" in several jurisdictions and had been mentioned only "by way of dictum" in one of our earlier cases. 198 Va. at 524-25 (citing *Fifield v. Van Wyck's Ex'r*, 94 Va. 557, 563-64 (1897)); *see also Maddox v. Maddox's Adm'r*, 52 Va. (11 Gratt.) 804, 810-11 (1854). The best synthesis of the gift-over rule, however, came from Justice Story. He explained that, the presence or absence of a gift over "might have a bearing" on the question of a drafter's intention but that it "should not be decisive." 1 Joseph Story, Commentaries on Equity Jurisprudence § 386, at 365 (W.H. Lyon, Jr. ed., 14th ed. 1918). Chancellor Kent agreed with this view, James Kent, Commentaries on American Law 132 (4th ed. 1840), as do we. *See generally* Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. h.

If so, the complaint expressly denied any request for a judicial resolution of Count II. The complaint expressly sought resolution of Count II "if and only if" the court interpreted Count II as not violating the no-contest provision. J.A. at 3, 12, 13 (punctuation omitted).[7]

Under Chip's approach, the proper analysis could lead to only two possible outcomes. If the circuit court believed that deciding Count II on the merits would violate the no-contest provision, then Count II under its own self-executing terms would be withdrawn, leaving Chip with whatever interest he had in the trust but without any additional financial information from Eleanor about the trust property. On the other hand, if the court believed that resolving Count II would not violate the no-contest provision, then the court could make a determination on Count II and resolve whether the inform-and-report waiver provision, when properly interpreted, had any effect on Eleanor's "independent duty," *id.* at 203, to provide the financial information to Chip. That independent duty, he argued, arose either under various provisions of the Virginia Uniform Trust Code or under common-law and equitable principles "separate and apart from statutory law in Virginia," *id.* at 203-05, and thus could not be extinguished by a provision waiving only the trustee's statutory duties under former Code § 55-548.13.

1.

Chip's arguments require that we reframe the ultimate question: Did his complaint, taken as a whole or analyzed count-by-count, violate the no-contest provision of the Theresa Trust and thus require the forfeiture of his interest in the trust? We answer that question in the negative.

We addressed an alternatively pleaded complaint in *Goodrich*, in which a beneficiary of a will filed a declaratory judgment action "seeking an interpretation of a phrase in the will." 246

---

[7] Throughout his briefs and oral argument in the circuit court, Chip repeated this qualification. *See* J.A. at 198, 200-01; R. at 173, 176-77.

Va. at 437. The executor interpreted the phrase "personal property" to mean only tangible personal property, but the beneficiary believed that the phrase included both tangible and intangible personal property. *Id.* The beneficiary insisted that he was not contesting the phrase itself, only the executor's flawed interpretation of it. *See id.*

The will in *Goodrich* contained a no-contest provision which, if triggered, would have caused the forfeiture of the beneficiary's interest if his complaint were construed as a contest of the personal-property provision. The beneficiary's complaint sought to navigate through those straits by "request[ing] the trial court initially to determine whether his declaratory judgment action was a 'contest' under [the no-contest clause], which would result in forfeiture of his interests under the will." *Id.* The court should "proceed with a determination of the phrase 'personal property,'" the complaint clarified, "[i]f and only if" the court determined that doing so would not constitute a contest triggering a forfeiture. *Id.* (punctuation omitted). In this way, the beneficiary emphasized that he was filing a will-construction case and not a will-contest case.

The circuit court accepted that qualification, holding that the declaratory judgment action did not constitute a contest of the will. We agreed and explained:

> As a general principle, one who seeks the guidance of a court in interpreting a provision in a will is not considered to have "contested" the will in a manner which would actuate a forfeiture clause. While forfeiture clauses or "no contest" clauses effectuate the testator's legitimate interest in preventing attempts to thwart his intent, a request for interpretation does not challenge the intent of the testator or the validity of the will.

*Id.* at 438. We recognized, as framed in the *Goodrich* litigation, that the beneficiary simply "believed the executor's interpretation of a phrase in the will was wrong" and sought the court's approval of his interpretation "only on the condition that seeking the guidance did not contravene the 'no contest' provision . . . of the will." *Id.* at 440. Implicitly approving the beneficiary's use

11

of alternative pleading in this context, we affirmed the circuit court's holding that the declaratory judgment action had not triggered the no-contest provision.[8]

We now give our express approval to the alternative-pleading model implicitly accepted in *Goodrich*. The alternative-pleading model has the virtue of principle by conforming to the traditional view that the complainant is "the master of the complaint," *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (citation omitted), and the value of pragmatism by permitting a declaratory judgment action to gauge the cost-benefit ratio of continuing litigation, *see Cherrie v. Virginia Health Servs., Inc.*, 292 Va. 309, 318 (2016) (recognizing that the Declaratory Judgment Act provides a "procedural remedy for the unripe, but legally viable, cause of action").

Count I of Chip's complaint closely followed the *Goodrich* template for seeking a preliminary determination on the scope of the no-contest provision in the Theresa Trust prior to a resolution of the disputed meaning of the inform-and-report waiver provision:

> Notwithstanding anything that may be contained in this Complaint to the contrary, this Complaint seeks no further relief than that which has been held by the Virginia Supreme Court in *Virginia Foundation of Independent Colleges v. Goodrich*, 246 Va. 435 (1993), to permit a beneficiary to file a declaratory judgment action seeking an interpretation of a phrase in a testamentary instrument, without such conduct being held to fall within the scope of a no contest clause and/or actuating a no contest clause. Consistent with *Goodrich*, this Complaint requests that the Court initially determine whether a declaratory judgment action (with respect to a determination of the rights and duties of Chip and Eleanor under the terms of the Trusts in light of Virginia Code Section 64.2-775, the Virginia Uniform Trust Code, Virginia common law, and/or equitable principles of law) would constitute a "contest" under either of the no contest clauses contained in the Trusts; and *if, and only if*, the Court determines that it would not

---

[8] *See* John F. Kuether, *Significant Probate and Trust Decisions*, 31 Real Prop. Prob. & Tr. J. 129, 153 (1996) (recognizing that *Goodrich* provided "guidelines that allow practitioners to safely deal with questions regarding testamentary forfeiture clauses").

> constitute a "contest" under the no contest clauses contained in the Trusts, this Complaint asks the Court to then proceed with a determination of the rights and duties of Chip and Eleanor under the terms of the Trusts in light of Virginia Code Section 64.2-775, the Virginia Uniform Trust Code, Virginia common law, and/or equitable principles of law.

J.A. at 3 (emphasis added).

The complaint goes on to assert that it did not seek to "contest" the Theresa Trust or any of its provisions but rather sought only "an interpretation of the trustee's inform and report requirements" under the specific "language" of the trust and under any independent duties of this kind pursuant to "Code Section 64.2-775, the Virginia Uniform Trust Code, Virginia common law, and/or equitable principles of law." *Id.* at 10-11. These allegations fit squarely within the *Goodrich* alternative-pleading model, and thus, we next address whether Count II of Chip's complaint violated the no-contest provision of the Theresa Trust.

2.

The circuit court held that Count II of the complaint had triggered the no-contest provision and, on this basis, ordered the forfeiture of Chip's interest in the Theresa Trust. Even if it were true that Count II had violated the no-contest provision, the court erred by disregarding the if-and-only-if proviso of Count I and ordering a forfeiture based upon Count II. Instead, in such a scenario, the circuit court should have entered judgment on Count I in Eleanor's favor and dismissed Count II as moot.

That said, we do not accept the first premise of the circuit court's reasoning that Count II violated the no-contest provision. Whether such a violation has occurred "depends upon the wording of the 'no contest' provision and the facts and circumstances of each particular case." *Womble*, 198 Va. at 529; *see also Goodrich*, 246 Va. at 439. In the first paragraph of the self-styled "IN TERROREM PROVISION" of the trust, Theresa provided background context

13

explaining her intent:

> I have from time to time made gifts and provided financial support to each of my children and to my grandchild as I wished, and as my husband and I determined to be necessary to their circumstances. Except as otherwise expressly set forth in this document, the share for any beneficiary hereunder shall not be affected by any gifts or loans to any beneficiary hereunder.

J.A. at 254. The next paragraph of the no-contest provision begins: "I desire that my children and grandchild not expend resources *disputing loans, gifts or bequests that I have made*." *Id.* (emphasis added). Theresa then sought to enforce that desire by declaring:

> Therefore, if any beneficiary under this Trust Agreement takes any one or more actions described in this paragraph, then the interest of such beneficiary under this Trust Agreement shall be revoked, and such beneficiary shall be deemed to have predeceased me without surviving descendants for all purposes under this Trust Agreement, effective as of the date such action is taken.

*Id.* One of the "actions" triggering the forfeiture was "[c]ontest[ing] any provision of this Trust Agreement." *Id.*

The no-contest provision provided a specific definition for a prohibited "contest" of the trust: "For purposes of this Article, a person shall be deemed to contest an instrument or action, if he or she takes any action seeking to invalidate, nullify, set aside, render unenforceable, or otherwise avoid the effect of such instrument, action or transaction." *Id.* at 255. A caveat, however, followed this definition:

> The preceding paragraph shall take effect regardless of whether such contest is made in good faith or is ultimately successful, provided, however that a petition made in good faith and not objected to by my Trustee hereunder, seeking an interpretation of this or any other instrument, shall not be considered a contest of such instrument.

*Id.*

14

Focusing on the sentence defining "contest," Chip asserts that Count II never sought to "invalidate, nullify, set aside, render unenforceable, or otherwise avoid" any provision of the Theresa Trust. *Id.* Nor did he violate his mother's "desire" that no beneficiary should "expend resources disputing loans, gifts or bequests" that she had previously made. *Id.* at 254. Instead, when properly construed, Count II merely sought an interpretation of the trustee's inform-and-report duties under other sources of law that would be wholly unaffected by the waiver provision. The circuit court disagreed with Chip and ordered the forfeiture of his interest in the trust. We believe the court erred in doing so.

Construing a legal document and contesting it are two different things.[9] The distinction may be fine, but it is a sharp one. A successful construction of an instrument can, and usually does, eliminate any need to contest it. Count II of Chip's complaint sought the former and expressly eschewed the latter. Under Chip's interpretation, the inform-and-report waiver provision did not need to be invalidated. Properly construed, he argued, the provision's literal text did not apply to independent inform-and-report duties arising under other sources of law. Rather, the text merely waived one specific statutory duty to inform and report "set forth" (as the waiver provision states) in former Code § 55-548.13. J.A. at 256.

The problem with the circuit court's conclusion — that Chip was seeking to avoid the effect of the waiver provision — is that buried within it is an implicit rejection of Chip's narrow interpretation of the provision in favor of Eleanor's broad interpretation. Working from that

---

[9] We acknowledge the linguistic distinctions commonly drawn (and yet often criticized) between the terms construction and interpretation. *Compare* Henry Campbell Black, Handbook on the Construction and Interpretation of the Laws 1-3 (2d ed. 1911), *with* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 13-15 (2012). In the unique context of no-contest provisions in estate planning documents, however, courts use the terms interchangeably. We do as well.

apparent assumption, the court equated Chip's disagreement with the broad interpretation as an outright contest of the provision itself. The point of *Goodrich*, however, was to provide a safe harbor for seeking a judicial interpretation of a disputed provision without the risk of the request for interpretation being characterized as an attempt to invalidate the provision.

Given our holding, we need not offer any opinion on the proper interpretation of the inform-and-report waiver provision in the Theresa Trust. We only observe that the parties presented the circuit court with differing interpretations, and the court appeared to assume that one was correct and the other not. For that assumption to be true, the circuit court would have had to determine either (i) that the provision waived not only the statutory inform-and-report duty specifically referenced but also all other analogous duties arising elsewhere in the law or (ii) that the waiver provision waived the one and only basis for imposing such inform-and-report duties on a trustee because the specified statute codified in toto any and all other legal and equitable grounds for asserting a breach of these duties. The circuit court could not have reached either of these two conclusions without construing the waiver provision.

In *Goodrich*, we recognized that seeking the "guidance of a court in interpreting" a disputed provision of a will does not constitute contesting the will "in a manner which would actuate a forfeiture clause." 246 Va. at 438. The same is true in trust law. In cases where a beneficiary files a declaratory judgment action "to construe the terms of the trust, it is usually held that the beneficiary's conduct did not bring the forfeiture clause into effect since the suit was intended to determine rather than oppose the settlor's intent." Bogert et al., *supra* note 4, § 181, at 292. "The primary justification for distinguishing this type of action is that it involves beneficiaries who are seeking to clarify what the testator actually meant and therefore to implement, rather than impede, the testator's intent." Gordon, *supra*, at 471-72.

16

Eleanor acknowledges this general rule but argues that the no-contest provision in the Theresa Trust required forfeiture even if Chip sought only a judicial interpretation of its provisions. Skipping over the sentence defining "contest," Eleanor lays emphasis on the proviso that follows. That proviso, broken out below for clarity, purports to recognize an exception to the no-contest provision:

- *provided*, however that a petition

  - made in *good faith* and

  - *not objected to by my Trustee* hereunder,

  - seeking an *interpretation* of this or any other instrument,

- shall not be considered a contest of such instrument.

*See* J.A. at 255 (emphases added). Eleanor argues that this proviso extends the no-contest provision to a beneficiary's good faith petition for a judicial interpretation of the trust if she, as trustee, objects to the request. To her, the meaning of the provision is quite clear: A request for a judicial interpretation of the trust constitutes a contest triggering forfeiture so long as she says so. We have several concerns about this argument.

To begin, we have never addressed (much less approved) a no-contest provision seeking to seal the courthouse doors to a litigant seeking an interpretation (rather than an invalidation) of a trust or will provision. Several courts[10] have criticized such an effort as an impermissible overreach inconsistent with the traditional boundaries of no-contest provisions. Leading

---

[10] *See, e.g.*, *Smithsonian Inst.*, 169 U.S. at 413; *Goodrich*, 246 Va. at 438; *Estate of Strader*, 132 Cal. Rptr. 2d 649, 655 (Ct. App. 2003); *Griffin v. Sturges*, 40 A.2d 758, 760 (Conn. 1944); *Black v. Herring*, 28 A. 1063, 1065 (Md. 1894). *See generally* Claudia G. Catalano, Annotation, *What Constitutes Contest or Attempt To Defeat Will Within Provision Thereof Forfeiting Share of Contesting Beneficiary*, 3 A.L.R.5th 590, § 15[a] (1992) (collecting cases).

commentators have taken a similar view.[11] We need not resolve that question in this case, however, because the proviso Eleanor relies upon merely implies, but does not expressly state, that her mother intended to include a request for judicial interpretation within the definition of a contest, thus warranting a forfeiture. In this area of legal draftsmanship, mere implications will not suffice.

As we noted earlier, forfeiture provisions are "strictly construed," *Rafalko*, 290 Va. at 395, because "equity abhors forfeitures," *Jones*, 101 U.S. at 628, and because "provisions that require forfeiture are not favored in the law and will not be enforced except according to their clear terms," *Rafalko*, 290 Va. at 402. To be effective, the provision must "precisely express" an intent to cause a forfeiture. *Keener*, 278 Va. at 443. "The instrument must give the right of forfeiture in terms so clear and explicit as to leave no room for any other construction." *Davis*, 205 Va. at 169. These canons of construction have great weight in the context of a no-contest provision in a trust instrument since a trust's very identity as a creature of equity presupposes the possibility of oversight of the trustee by a chancellor jealous of safeguarding the rights of all parties with an interest in the trust.

Strictly construed, the proviso in the no-contest provision of the Theresa Trust does not equate a request for an *interpretation* of the trust's provisions with a *contest* of the trust. Instead, the no-contest provision enumerates the actions constituting a "contest" as "any action seeking to invalidate, nullify, set aside, render unenforceable, or otherwise avoid the effect of such instrument, action or transaction." J.A. at 255. These verbs — invalidate, nullify, set aside, render unenforceable, and avoid the effect of — are not synonyms for interpret.

---

[11] *See, e.g.*, Restatement (Third) of Trusts § 96 cmt. e (2012); Restatement (Third) of Property: Wills and Donative Transfers § 8.5 cmt. d; Bogert et al., *supra* note 4, § 181, at 292; Rounds & Rounds, *supra* note 5, § 5.5, at 436.

18

The proviso purports to remove an action (a request for judicial interpretation) from a list in which the action never appeared in the first place. The proviso states that Eleanor, as trustee, can agree that a request for an interpretation is not a contest. The proviso thus assumes that a request for an interpretation has already been defined as a "contest" by the no-contest clause — thus creating the need for a proviso that excises "interpretation" from that definition in certain circumstances. By doing so, the proviso makes a tautological assertion "in which the point to be proved is implicitly taken for granted," Black's Law Dictionary 189 (11th ed. 2019), a classic example of begging the question. One does not need an exception to a rule to do something the rule does not prohibit.

For these reasons, the principles of strict construction dictate that neither the definition of "contest" nor the proviso's attempted exception from that definition clearly and unmistakably states that either count of Chip's declaratory judgment action violates the no-contest provision by seeking an interpretation of the trust and, based thereon, a declaration of the trustee's duties. The circuit court erred in concluding otherwise.

C.

1.

Our discussion thus far has centered on Chip's declaratory judgment complaint because that was what was dismissed "with prejudice in its entirety" by the entry of summary judgment. J.A. at 147. We have not addressed the alternative argument that Chip asserted on brief in the circuit court and repeated to us on appeal. That argument suggested that, *if* the inform-and-report waiver and no-contest provisions were *incorrectly* interpreted to erect an impregnable barrier to judicial review of a fiduciary's duty to inform and report, then neither provision would be enforceable as a matter of law. We have little doubt that this claim, if Chip had pleaded it in

19

his complaint, could have been challenged as a contest of either the no-contest or the waiver provisions of the Theresa Trust. The circuit court never got that far, however, because of its view that, even without that alternative argument, the complaint itself (which sought only an interpretation of the trust) constituted a contest triggering the no-contest provision.

We, too, do not reach this alternative argument but for reasons different than those identified by the circuit court. While Chip's alternative argument raises important questions about the conjoined application of no-contest and inform-and-report waiver provisions in trust instruments that would be issues of first impression for this Court, *see supra* at 8 & n.5, these questions are not ripe for review. Chip never pleaded that argument, and expressly disclaimed it in his declaratory judgment complaint, *see* J.A. at 10-11. The circuit court, moreover, has yet to rule on Chip's principal arguments regarding the proper interpretation of the inform-and-report waiver provision and the role, if any, of independent legal and equitable duties to inform and report beyond the statutory duties specifically mentioned in the waiver provision.

"Because 'we are a court of review, not of first view,'" *Bailey v. Loudoun Cty. Sheriff's Office*, 288 Va. 159, 181 (2014) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)); *see also CVAS 2, LLC v. City of Fredericksburg*, 289 Va. 100, 120 (2015), we leave Chip's alternative argument for the circuit court to consider in the first instance on remand, assuming that Chip properly asserts it and that the court's resolution of the principal arguments does not render it moot. Offering an advisory opinion on this issue in the present appeal would represent an attenuated exercise of judicial power in which this Court "traditionally declines to participate," *Commonwealth v. Harley*, 256 Va. 216, 219-20 (1998).

### 2.

We likewise offer no opinion on Eleanor's argument on appeal that she had no duty at all

as trustee to inform and report to the beneficiaries about the trust property before Theresa's death in 2015 because the trust was revocable at that time and did not become irrevocable until Theresa's death. *See* Appellee's Br. at 1-2, 23-25, 40. This argument responds to Chip's contrary allegation in his complaint that "[o]n or after the time that Eleanor began serving as trustee of the Theresa Trust, Theresa's abilities declined, such that Theresa lacked the capacity to revoke the Theresa Trust." J.A. at 5. Though the argument raises pertinent legal issues,[12] the circuit court made no factual findings about Theresa's capacity or the nature of Eleanor's duties as trustee of the Theresa Trust prior to Theresa's death. We thus decline to consider these issues on appeal and leave them for the circuit court to address in the first instance on remand if the parties raise them.

### III.

In sum, the declaratory judgment action did not trigger the no-contest provision in the Theresa Trust requiring the forfeiture of Chip's interest in the trust. For this reason, we reverse the circuit court's summary judgment dismissing Chip's complaint and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

---

[12] *See* Code § 64.2-750 ("The capacity required to create, amend, *revoke*, or add property to a revocable trust, or to direct the actions of the trustee of a revocable trust, is the same as that required to make a will." (emphasis added)); Code § 64.2-752(A) ("While a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor."). *See generally* Bogert et al., *supra* note 4, § 964, at 101-05 (3d ed. 2010) (noting that the Uniform Trust Code originally provided "that the trustee's duties were owed exclusively to the settlor *only if the settlor had capacity to revoke the trust*" but that later amendments made this limitation optional so that without the limitation "the trustee cannot be held to account by other beneficiaries for its administration of a revocable trust during the settlor's lifetime" regardless of the settlor's capacity (emphasis added)).